[Civ. No. 45813. Second Dist., Div. Five. Oct. 30, 1975.]

REA ENTERPRISES, Plaintiff and Respondent, v.
CALIFORNIA COASTAL ZONE CONSERVATION
COMMISSION et al., Defendants and Appellants.

598

COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Alan Robert Block, Deputy Attorney General, for Defendants and Appellants.

Caditz & Grant, Allan M. Caditz, Mark A. Resnik, Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball, Charles E. Greenberg and Laurence F. Jay for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—This is an appeal from an order granting the issuance of a peremptory writ of mandamus directing appellants, the

California Coastal Zone Conservation Commission, etc., et al. ("State Commission"), to set aside its ruling denying a development permit to respondent, REA Enterprises, etc. ("REA") and directing the South Coast Regional Commission ("Regional Commission") to deliver the permit it previously had issued to REA.

The sole issue presented in this appeal involves interpretation of the California Coastal Zone Conservation Act of 1972 ("Coastal Act") (Pub. Res. Code, Div. 18, §§ 27000-27650): Upon an appeal from a decision rendered by the Regional Commission approving a coastal development permit, does a tie vote by the State Commission constitute an affirmation of the Regional Commission's decision, or, to say it in a different way, does a tie vote by the State Commission result in the denial of the permit?

### Procedural Background

REA initiated this action pursuant to Public Resources Code section 27424[1] seeking judicial review of the State Commission's decision denying REA a coastal zone development permit pursuant to section 27400 to construct a 153-unit residential condominium project adjacent to the beach in the Playa Del Rey area of the City of Los Angeles.[2] On May 25, 1973, REA applied for a permit with the Regional Commission. Following public hearings,[3] the Regional Commission approved the application on October 15, 1973, and issued the permit on October 30, 1973. This decision was appealed to the State Commission on October

---

[1]Section 27424. "Any person, including an applicant for a permit, aggrieved by the decision or action of the commission or regional commission shall have a right to judicial review of such decision or action by filing a petition for a writ of mandate in accordance with the provisions of Chapter 2, (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, within 60 days after such decision or action has become final."

[2]Section 27400. "On or after February 1, 1973, any person wishing to perform any development within the permit area shall obtain a permit authorizing such development from the regional commission and, if required by law, from any city, county, state, regional or local agency.

"Except as provided in Sections 27401 and 27422, no permit shall be issued without the affirmative vote of a majority of the total authorized membership of the regional commission, or of the commission on appeal."

[3]Section 27224. "The commission and regional commissions shall meet no less than once a month at a place convenient to the public. Unless otherwise provided in this division, no decision on permit applications or on the adoption of the coastal zone plan or any part thereof shall be made without a prior public hearing. All meetings of the commission and each regional commission shall be open to the public. A majority affirmative vote of the total authorized membership shall be necessary to approve any action required or permitted by this division, unless otherwise provided." ·

29. 1973, by the timely filing of notices of appeal pursuant to section 27420, subdivisions (a) and (c) by Janna Lingenfelter and Ariel C. Hilton.[4] On November 28, 1973, the State Commission conducted a public hearing in connection with the appeal pursuant to section 27423.[5] On January 23, 1974,[6] the State Commission voted on the appeal; the vote resulted in a tie, with six members in favor of granting the permit and six opposed. As a consequence of the tie vote, the State Commission refused to approve issuance of the permit.

REA then instituted this action in mandamus pursuant to section 27424 and Code of Civil Procedure section 1094.5. (See *State of California* v. *Superior Court,* 12 Cal.3d 237, 248 [115 Cal.Rptr. 497, 524 P.2d 1281].) This appeal followed the trial court's ruling that the Coastal Act gives the State Commission only limited jurisdiction of an appellate nature. Applying the principle that a lower tribunal's ruling stands upon a tie vote by the appellate body, the trial court held that the tie vote by the State Commission amounted to an affirmation of the Regional Commission's approval and issuance of the development permit.[7] On October 23, 1974, the court granted the peremptory writ of mandamus, directing the State and Regional Commissions to deliver the permit and

---

[4]Section 27420. "(a) The commission shall prescribe the procedures for permit applications and their appeal.... 

"(c) The regional commission shall act upon an application for permit within 60 days after the conclusion of the hearing and such action shall become final after the 10th working day unless an appeal is filed within that time."

[5]Section 27423. "(a) An applicant, or any person aggrieved by approval of a permit by the regional commission, may appeal to the commission.

"(b) The commission may affirm, reverse, or modify the decision of the regional commission. If the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final.

"(c) The commission may decline to hear appeals that it determines raise no substantial issues. Appeals it hears shall be scheduled for a de novo public hearing and shall be decided in the same manner and by the same vote as provided for decisions by the regional commissions."

[6]The Coastal Act empowers each commission to adopt any regulations or take any action it deems reasonable and necessary to carry out its provisions. (§ 27240, subd. (d).) A comprehensive code of regulations has been adopted. (Cal. Admin. Code, tit. 14, div. 5.5, § 13001 et seq. (hereinafter referred to as Admin. Code).)

At REA's request, the State Commission extended the 60-day time period within which it was required to act. (Admin. Code, § 13931 provides in pertinent part: "The scheduling and determination of appeals shall be such as to allow final action within sixty (60) days of the date an appeal is filed, *unless a request for an extension of the 60-day period is made and granted.*") (Italics added.)

[7]*Santa Rosa City R.R.* v. *Railway Co.,* 112 Cal. 436 [44 P. 733]; *State, Department of Ecology* v. *City of Kirkland* (1974) 84 Wn.2d 25 [523 P.2d 1181, 1184].

directing the State Commission to set aside its decision of January 23, 1974. We do not agree.

## Discussion

The California Coastal Zone Conservation Act of 1972 ("Coastal Act") was adopted by the electorate of the State of California as an initiative measure, Proposition 20, at the general election on November 7, 1972. The Coastal Act established the State Commission and six Regional Commissions, each comprised of twelve members (§§ 27001, subd. (d), 27200, and 27201, subd. (e))[8] for the purpose of preparing for submission to the California Legislature prior to December 1, 1975, a plan for the conservation of the area described in the act as the "Coastal Zone" (defined in § 27100).[9] The Coastal Act further provides a system for controlling interim coastal development by requiring any person (§ 27105) wishing to construct any structure within 1,000 yards of the mean high tide line (§ 27104) on or after February 1, 1973, must first obtain a permit authorizing development from the appropriate Regional Com-

---

[8]Section 27001, subdivision (d): "To create the California Coastal Zone Conservation Commission, and six regional coastal zone conservation commissions, to implement the provisions of this division."

Section 27200. "The California Coastal Zone Conservation Commission is hereby created and shall consist of the following members:

"(a) Six representatives from the regional commissions, selected. by each regional commission from among its members.

"(b) Six representatives of the public who shall not be members of a regional commission."

Section 27201, subdivision (e): "The South Coast Regional Commission for Los Angeles and Orange Counties shall consist of the following members:

"(1) One supervisor from each county.

"(2) One city councilman from the City of Los Angeles selected by the president of such city council.

"(3) One city councilman from Los Angeles County from a city other than Los Angeles.

"(4) One city councilman from Orange County.

"(5) One delegate to the Southern California Association of Governments.

"(6) Six representatives of the public."

[9]Section 27001, subdivision (b): "(b) To prepare, based upon such study and in full consultation with all affected governmental agencies, private interests, and the general public, a comprehensive, coordinated, enforceable plan for the orderly, long-range .conservation and management of the natural resources of the coastal zone, to be known as the California Coastal Zone Conservation Plan."

Section 27300: "The commission shall prepare, adopt, and submit to the Legislature for implementation the California Coastal Zone Conservation Plan."

Section 27320, subdivision (c): "On or before December 1, 1975, the commission shall adopt the coastal zone plan and submit it to the Legislature for its adoption and implementation."

mission (§ 27400).[10] The purpose of the interim permit requirement is to assure coastal development (defined in § 27103) consistent with the objectives of the Coastal Act during the interim period. (See §§ 27001, 27302, 27402, and 27403.)[11]

---

[10]Section 27104 provides in pertinent part: " 'Permit Area' means that portion of the coastal zone lying between the seaward limit of the jurisdiction of the state and 1,000 yards landward from the mean high tide line of the sea . . . ."

[11]Section 27001. "The people of the State of California hereby find and declare that the California coastal zone is a distinct and valuable natural resource belonging to all the people and existing as a delicately balanced ecosystem; that the permanent protection of the remaining natural and scenic resources of the coastal zone is a paramount concern to present and future residents of the state and nation; that in order to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to preserve the ecological balance of the coastal zone and prevent its further deterioration and destruction; that it is the policy of the state to preserve, protect, and, where possible, to restore the resources of the coastal zone for the enjoyment of the current and succeeding generations; and that to protect the coastal zone it is necessary:

". . . . . . . . . . . . . . .
"(c) To ensure that any development which occurs in the permit area during the study and planning period will be consistent with the objectives of this division."

Section 27302. "The coastal zone plan shall be consistent with all of the following objectives:

"(a) The maintenance, restoration, and enhancement of the overall quality of the coastal zone environment, including, but not limited to, its amenities and aesthetic values.

"(b) The continued existence of optimum populations of all species of living organisms.

"(c) The orderly, balanced utilization and preservation, consistent with sound conservation principles, of all living and nonliving coastal zone resources.

"(d) Avoidance of irreversible and irretrievable commitments of coastal zone resources."

Section 27402. "No permit shall be issued unless the regional commission has first found, both of the following:

"(a) That the development will not have any substantial adverse environmental or ecological effect.

"(b) That the development is consistent with, the findings and declarations set forth in Sections 27001 and with the objectives set forth in Section 27302.

"The applicant shall have the burden of proof on all issues."

Section 27403. "All permits shall be subject to reasonable terms and conditions in order to ensure:

"(a) Access to publicly owned or used beaches, recreation areas, and natural reserves is increased to the maximum extent possible by appropriate dedication.

' "(b) Adequate and properly located public recreation areas and wildlife preserves are reserved.

"(c) Provisions are made for solid and liquid waste treatment, disposition, and management which will minimize adverse effects upon coastal zone resources.

"(d) Alterations to existing land forms and vegetation, and construction of structures shall cause minimum adverse effect to scenic resources and minimum danger of floods, landslides, erosion, siltation, or failure in the event of earthquake."

█ The total scheme of the Coastal Act becomes clear when it is recognized that there is a chain of responsibility therein created. First, it is the responsibility of the Regional Commission to adjudicate the propriety of granting or denying a permit. This presupposes recognition of the regional effect upon the ecosystem (§ 27402). Second, when disagreement arises and a timely appeal is filed, the State Commission takes a new, unlimited look at the same request for a permit by a de novo public hearing. The State Commission is required not only to review the regional effect, but has the responsibility of determining the statewide effect of the proposed development (§ 27001). We find support for this conclusion in the expression of the Supreme Court in *State of California* v. *Superior Court,* 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281]. There, the court stated (at p. 245): "It is obvious from the terms of the Act that the [State] Commission is authorized to determine whether a permit should be issued. (Pub. Resources Code, § 27400 et seq.)." And (at p. 247): "Even the most cursory examination of the Act reveals that determination of whether an applicant qualifies for a permit is entrusted to the [State] Commission's discretion. *Thus, a permit may not issue unless the [State] Commission finds, for example, that the development will not have any substantial adverse environmental or ecological effect* (Pub. Resources Code, § 27402, subd. (a)) or irreversibly commit coastal zone resources, and that the proposed development will enhance the environment of the coastal zone (§§ 27402, subd. (b), 27302, subds. (a), (d)). The application of these factors requires the [State] Commission to undertake a delicate balancing of the effect of each proposed development upon the environment of the coast as a predicate to the issuance of a permit." (Italics added.) As the court in *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.,* 48 Cal.App.3d 99, 108 [121 Cal.Rptr. 650], stated: "The Regional Commission has original jurisdiction to pass upon applications for permits. But the appeal provided by the Act, if the State Commission decides it presents a substantial issue, involves a *redetermination* by the State Commission of the merits of the application. Its decision might very well take into account state-wide policies, while the purview of the Regional Commission . . . might be narrower." (Italics added.)

Certainly, to carry out this responsibility, the State Commission must have unlimited adjudicatory powers (subject only to constitutional and statutory restrictions).

█ Specifically, section 27423, subdivision (c), provides that appeals "*shall* be scheduled for a *de novo* public hearing and *shall* be decided in the same manner and by the same vote as provided for decisions by the

regional commissions." (Italics added.) The manner and vote that the State Commission is required to follow in deciding the appeal is set forth in section 27400 which provides that *"no permit shall be issued* without the *affirmative* vote of a majority of the total authorized membership of the regional commission, or *of the [State] Commission on appeal."* (Italics added.) Furthermore, section 27224 provides that a "majority *affirmative* vote of the total authorized membership *shall* be necessary to approve any action required or permitted by this division, unless otherwise provided." (Italics added.) This action is included in article 2 of the Coastal Act, which deals with organization of the Regional and State Commissions.[12]

It is a well established rule of statutory construction that the word "shall" connotes mandatory action and "may" connotes discretionary action. (*County of Sacramento* v. *Superior Court,* 20 Cal.App.3d 469, 472 [97 Cal.Rptr. 771]; see Gov. Code, § 14; Bus. & Prof. Code, § 19.) Applying this rule of statutory construction to section 27423, subdivision (c), we conclude that not only is the State Commission required to conduct a de novo public hearing, but it is also required to conduct the hearing in the same manner and by the same vote as the Regional Commission.[13] Since there are twelve authorized members of the State

---

[12]Administrative Code section 13151 provides that "[e]xcept as otherwise required by Public Resources Code, section 27401, or in these regulations, actions of the [State] Commission or of a Regional Commission shall be by vote of a majority of the total authorized membership of that Commission." Thus, this section requires a majority vote by the State Commission to grant a permit once the matter is accepted on appeal.

[13]Throughout this opinion we utilize the term "majority" vote which was used by both parties throughout their briefs and in oral argument. Where a *two-thirds* vote is required (§ 27401) (which is probably the case here), the identical rationale, of course, applies and the term "two thirds" would merely be substituted for the term "majority." Section 27401 provides:

"No permit shall be issued for any of the following without the affirmative vote of two-thirds of the total authorized membership of the regional commission, or of the commission on appeal:

"(a) Dredging, filling, or otherwise altering any bay, estuary, salt marsh, river mouth, slough, or lagoon.

"(b) Any development which would reduce the size of any beach or other area usable for public recreation.

"(c) Any development which would reduce or impose restrictions upon public access to tidal and submerged lands, beaches and the mean high tideline where there is no beach.

"(d) Any development which would substantially interfere with or detract from the line of sight toward the sea from the state highway nearest the coast.

"(e) Any development which would adversely affect water quality, existing areas of open water free of visible structures, existing and potential commercial and sport fisheries, or agricultural uses of land which are existing on the effective date of this division."

Commission, this would require at least seven votes for the issuance of a permit. Action was taken by the State Commission. REA did not receive the statutorily required number of votes. By failure to obtain a majority vote, the action taken by the State Commission effectuated a denial of the issuance of the development permit.[14] It would be just as fallacious to say that a tie vote by the State Commission did not result in a denial of a permit as to say that such a tie vote at the regional level would not result in a denial of the permit. Respondent does not suggest that without a majority affirmative vote to grant the permit, the permit would be denied. The *denial* is *action* by the respective commission.

REA, however, contends that the jurisdiction of the State Commission is strictly of an appellate nature. It argues that the "de novo public hearing" language of section 27423, subdivision (c), refers only to the process by which the State Commission is required to gather evidence "lest it be argued that the State Commission is limited to reading the transcript or record of the Regional Commission and determining whether the decision appealed from is supported by substantial evidence contained in that record." After conducting a new public hearing, REA argues that the remedies available to the State Commission are limited by section 27423, subdivision (b), to either affirming, reversing or modifying the Regional Commission's decisions. It asserts that if the State Commission was intended to treat each case in which the State Commission granted an appeal as a de novo matter, section 27423, subdivision (b), should have been cast in the language of "grant" or "deny" rather than in the traditional appellate language of "affirm, reverse, or modify." In support of this position, REA relies upon Administrative Code section 14000.[15] This section provides that the *filing*

---

[14]REA argues that our construction of the act, in effect, replaces the conjunction "or" with "and" in the controlling language of sections 27400 and 27401, which reads: "No permit shall be issued without the affirmative vote of a majority [two-thirds in § 27401] of the regional commission, *or* of the [State] commission *on appeal*" (italics added). REA contends that this would require both bodies to affirmatively vote to grant a permit. This argument fails to recognize that an aggrieved applicant may appeal from a denial of his application, in which case solely the State Commission may affirmatively vote to grant the permit. We believe that the controlling language quoted compels our ruling that an affirmative, majority (or two-thirds) vote by the State Commission is required to grant a permit after an appeal from a decision of the Regional Commission has been accepted. We conclude that the only reasonable construction is to construe "of the [State] Commission on appeal" to intend "of the [State] Commission [when] on appeal." This construction is compelled by the requirement that the hearing on appeal be a de novo hearing, which we thoroughly discuss *infra*, at pages 612 through 614.

[15]"§ 14000. The filing of an appeal from any order or decision of a Regional Commission granting a permit or claims of exemption, shall suspend the operation and

of an appeal from a decision of the Regional Commission merely suspends rather than extinguishes the decision until final action is taken by the State Commission. Since the State Commission did not vote to reverse or modify the Regional Commission's vote, it contends that the tie vote resulted in an affirmance of the Regional Commission's decision which had been suspended pending a ruling.

In support of its position, REA refers to various code sections which it argues indicate that the jurisdiction of the State Commission is limited to an appellate function: Section 27420, subdivision (c), provides that the State Commission may review a Regional Commission vote only after a notice of appeal is filed within 10 working days after the decision is rendered. If a timely notice is not filed, the decision of the Regional Commission becomes final automatically. Furthermore, REA argues that the State Commission is not required to accept every case for which a timely notice of appeal has been filed; it may decline to hear any appeal which it determines, in its discretion, fails to raise any substantial issues. (§ 27423, subd. (c); Admin. Code, § 13930.) The argument is fallacious because the determination by the State Commission as to whether it will not accept the appeal must be made "by affirmative vote of the majority of the total authorized membership of the Commission." (Admin. Code, § 13920.) Thus an appeal (and a de novo hearing) is not assured by the filing of the notice. As previously discussed, when the appeal is before the State Commission for the de novo hearing, the Regional Commission's grant of the permit is suspended pending action by the State Commission. The Regional Commission's decision becomes final if the State Commission, after it accepts the appeal, fails to rule within 60 days after a timely notice of appeal is filed. (§ 27423, subd. (b).) Moreover, the category of persons who may appeal to the State Commission is limited to the initial applicant or any person who has been aggrieved by approval of the permit by the Regional Commission. (§ 27423, subd. (a); Admin. Code, §§ 13900, 13903; see also *Klitgaard & Jones, Inc. v. San Diego Coast Regional Com., supra,* 48 Cal.App.3d 99.)

While section 27423 might have been as clear had the terms "grant" or "deny" been used in place of the language "affirm, modify, or reverse,"

---

effect of such order, decision, or permit until final action on said appeal by the Commission. Pending appeal, no development pursuant to any such appealed from order, decision, or permit shall take place. The substance of this section shall be set forth in every such order and decision adopted and every permit issued by a Regional Commission."

Undoubtedly, this section was enacted to provide a mechanism by which those cases which the State Commission fails to take action on within 60 days after the notice of appeal is filed are given permit effectiveness. (§ 27423, subd. (b).)

we believe that the legislative intent, which must be given effect (Code Civ. Proc., § 1859), can be gleaned from section 27423, subdivision (c), and sections 27224 and 27400. We note further that the language "affirm, reverse or modify" is broader in scope than "grant or deny." We cannot conceive of any action the State Commission might take which would not be encompassed within this language: i.e., it could affirm (either the granting or denial of the permit); it could reverse (place in effect a contra-order of either a grant or denial), or it could modify (relating to a grant only) conditions or extent of any grant of permit. Section 27423, subdivision (c), specifically requires a de novo public hearing by the same manner *and vote* as the Regional Commission; sections 27400 and 27224 require an affirmative vote by the majority of the authorized members of the State Commission to grant a permit.

The key word in these sections is "affirmative." It refers to the granting or issuance of a permit, not a denial of one. If the appeal is from a denial of a permit, at least seven pro votes are required to "reverse" the Regional Commission (i.e., grant the permit). If the Regional Commission grants a permit (as in the present case), at least seven pro votes are required to "affirm" or "modify" (i.e., grant the permit). On the other hand, if the appeal is from a denial of a permit and less than seven pro votes are forthcoming, there is no affirmative vote for the granting of the permit and the result is the same as an affirmance of the Regional Commission's denial. However, if the appeal is from a permit which has been granted and no affirmative, majority vote is obtained, there can be no affirmance (grant of permit) of the Regional Commission's decision. Thus, there are three methods of having a permit denied: (1) a denial of a permit by the Regional Commission and the failure to get a majority, affirmative vote to hear an appeal on the basis that it raises no substantial issue (Admin. Code, § 13920);[16] (2) a denial by the Regional Commission and the failure to get a majority affirmative vote by the State Commission on appeal after the appeal is accepted; (3) a grant of a permit by the Regional Commission and a failure to get a majority, affirmative vote to "affirm" or "modify" by the State Commission on appeal. Administrative regulations which have been adopted by the Commissions (Admin. Code, § 13001 et seq.) dictate this construction. Section 13343 provides in pertinent part that "Votes by a Regional Commission shall only be on the affirmative question of whether the permit should be granted; i.e., a 'yes' vote shall be to grant a permit (with

---

[16]The section strongly suggests that an appeal *does* present a substantial issue because it requires an affirmative vote of the State Commission to determine that the appeal raises no substantial issue.

or without conditions) and a 'no' vote to deny." Section 13931, which sets forth the appeal procedure, provides in pertinent part that if the State "Commission determines to hear an appeal it shall substantially follow the format and procedures prescribed in Chapters 4 and 5 of these regulations for permit matters before Regional Commissions." Accordingly, the vote before the State Commission was "whether the permit should be granted." (§ 13343.)

The effect of the above quoted portions of sections 13343 and 13931 makes clear that "votes by [the State Commission] shall only be on the affirmative question of whether the permit should be granted." Therefore, the vote by the State Commission was whether or not to grant the permit, contrary to REA's argument that the State Commission was limited by section 27423, subdivision (b), to vote either to affirm, modify, or reverse. Adoption of REA's construction of these sections would require us to nullify the language of these sections. We are prohibited from doing so. ▪ It is a rule of statutory construction that every part of an act should be effectuated so that the resulting interpretation will give effect to the intent of the Legislature. (*Mercer v. Perez,* 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; *County of Sacramento v. Superior Court, supra,* 20 Cal.App.3d 469, 472.) "[A] court is prohibited from such a construction as will omit a portion of a statute. (Code Civ. Proc., § 1858.)" (*Mercer v. Perez, supra,* at p. 117; *Van Nuis v. Los Angeles Soap Co.,* 36 Cal.App.3d 222, 229 [111 Cal.Rptr. 398].) A statute must also be read and considered as a whole, and each section must be reconciled with the others and given effect. (Code Civ. Proc., § 1858; *In re Bandmann,* 51 Cal.2d 388, 393 [333 P.2d 339].) Thus, it is clear that we are required to construe the Coastal Act in order to effectuate all of its provisions.

Indeed, there are other cardinal rules of statutory construction which compel the same conclusion that the State Commission's jurisdiction is not limited to merely one of an appellate nature. ▪ It is well settled that where there are two possible interpretations available, the one more in keeping with the purposes of the statute will be adopted (*Moyer v. Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *West Pico Furniture Co. v. Pacific Finance Loans,* 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665]) and that where there are conflicting provisions, the one susceptible to only one meaning will control the one that is susceptible of two meanings, if the statute can thereby be made harmonious. (*People v. Moroney,* 24 Cal.2d 638, 643 [150 P.2d 888];[1] *Valenzuela v. Board of Civil Service Comrs.,* 40 Cal.App.3d 557, 564 [115 Cal.Rptr. 103].) Since section 27423, subdivi-

sion (b), is susceptible to different interpretations, we accept the interpretation placed on the Coastal Act by the State Commission in order to harmonize the remainder of the statute. ■ Although "final responsibility for the interpretation of the law rests with the courts" (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]), great weight must be given to the administrative construction of those charged with the enforcement and interpretation of a statute. (*Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79].) A court will not depart from such construction unless it is clearly erroneous.[17] (*Rivera* v. *City of Fresno,* 6 Cal.3d 132, 148 [98 Cal.Rptr. 281, 490 P.2d 793].) We cannot say that the interpretation placed by the State Commission on the Coastal Act is erroneous in view of the specific language of sections 27423, subdivision (c), 27224, and 27400.

■ Furthermore, there is another rule of statutory construction applicable here that a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. (See *People* v. *Moroney, supra,* at p. 643; *Short Stop, Inc.* v. *Fielder,* 17 Cal.App.3d 435, 444 [95 Cal.Rptr. 102].) In the instant case, section 27423, subdivision (c), and sections 27224 and 27400 delineate the specific procedure which the State Commission is required to follow in hearing appeals. Since section 27423, subdivision (b), is a more general provision, it is controlled by the more specific sections.

■ Moreover, relying on the figures submitted in appellant's brief, the State Commission has reviewed several hundred permit applications since its inception, and in 24 of those cases the State Commission has denied a permit because of a tie vote. During this time the Legislature has amended the Coastal Act on three occasions, including a very minor change of section 27423 (Stats. 1973, ch. 1014, § 7, p. 2016). Since the Legislature must be well aware of the State Commission's interpretation of the Coastal Act, we assume that the interpretation placed on sections 27423, 27224 and 27400 by the State Commission is expressive of the Legislature's intent. (*Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172, 176.)

---

[17]". . . . we should follow the construction by those charged with the statute's execution unless there are compelling indications that it is wrong." (*People of St. of Cal.* ex rel. *Younger* v. *Tahoe Reg. P. Ag.* (9th Cir. 1975) 516 F.2d 215, 219; cert den. Oct. 6, 1975.)

■ REA next contends that this court should adopt the application of the term "de novo" as set forth in the case of *Dare* v. *Bd. of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304], wherein the court discussed the scope of judicial review in administrative mandamus proceedings. (Code Civ. Proc., § 1094.5.) To analyze this contention, we must initially determine the interpretation California courts have placed on the term "de novo." The leading case in California on this point is *Buchwald* v. *Katz,* 8 Cal.3d 493 [105 Cal.Rptr. 368, 503 P.2d 1376]. In *Buchwald,* the Supreme Court affirmed its earlier decision of *Collier & Wallis, Ltd.* v. *Astor,* 9 Cal.2d 202 [70 P.2d 171], where it had construed the language of section 19 of the Private Employment Agency Law (later codified in Lab. Code, § 1700.44).[18] In the *Collier & Wallis* case, the court discussed the term "de novo" as follows (at p. 205): "A hearing *de novo* literally means a new hearing, or a hearing the second time. (18 Cor. Jur. 486.) Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held. It differs, therefore, from an ordinary appeal from an inferior to an appellate body where the proceedings of the hearing in the inferior court are reviewed and their validity determined by the reviewing court. A hearing *de novo* therefore is nothing more nor less than a trial of the controverted matter by the court in which it is held. The decision therein is binding upon the parties thereto and takes the place of and completely nullifies the former determination of the matter. . . . [T]he section simply gives to the party dissatisfied with the determination of the labor commissioner a hearing of the matter . . . before the superior court. The court hears the matter, not as an appellate court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner. The act does not, therefore, in fact or in law confer appellate jurisdiction upon the superior court, but does provide a legal forum where either party to the controversy, in case he is dissatisfied with the determination of the labor commissioner, may have his rights adjudicated."

---

[18]Section 19 provided as follows: "In all cases of controversy arising under this act the parties involved shall refer the matter in dispute to the commissioner of labor, who shall hear and determine the same subject to an appeal within ten days to the Superior Court where the same shall be heard de novo."

Section 1700.44 in relevant part provides as follows: "In cases of controversy arising under this chapter the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."

In the present case, the language of section 27423, subdivision (c)—"Appeals . . . shall be scheduled for a de novo public hearing and shall be decided in the same manner and by the same vote as provided for decisions by the regional commissions"—is virtually identical to the language in the *Collier & Wallis* case—"such hearing contemplates an entire trial . . . in the same manner in which the same was originally heard." Thus, we conclude that the term "de novo" as used in section 27423, subdivision (c), in light of Administrative Code sections 13931 and 13343, contemplates not merely a new public hearing, but that all matters involved are to be decided " 'anew; afresh; over again.' " (*People v. Bourdon,* 10 Cal.App.3d 878, 881, fn. omitted [89 Cal.Rptr. 415].)

The *Dare* case, upon which REA relies so extensively, is not in point. The rules enunciated in *Dare,* as recently discussed in *Bixby* v. *Pierno,* 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242] and *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 34-36 [112 Cal.Rptr. 805, 520 P.2d 29], are specifically limited to judicial review of administrative mandamus proceedings. Code of Civil Procedure section 1094.5 provides for two types of judicial review of administrative decisions. When such a decision affects a vested and fundamental right, then a full and independent review of the administrative decision is required. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144.) Hence, the scope of review before a court which is reviewing a decision affecting a vested right is not an unqualified or unlimited trial de novo, but the court is to exercise an independent judgment from facts elicited from the record, as well as reviewing additional evidence where the evidence could not have been produced at the administrative hearing in the exercise of reasonable diligence, or the evidence was improperly excluded at the hearing. (*Bixby* v. *Pierno, supra,* at p. 143, fn. 10.) On the other hand, if the administrative decision does not involve or substantially affect a fundamental vested right, the trial court must still review the entire administrative record to determine whether the findings are supported by substantial evidence, and whether the agency committed any errors of law. The trial court need not look beyond the record of the administrative proceeding. (*Id.,* at p. 144; *Strumsky, supra,* at p. 44.)

With respect to the limited nature of judicial review of administrative mandamus proceedings, the *Dare* court stated (at p. 795): ". . . . The significance of the trial designated as a trial de novo must be tested in the light of the nature and scope of the remedy in mandamus thus made available . . . . The scope of such a trial is not to be deemed to be the unqualified or unlimited trial de novo to which a litigant is entitled in the

superior court on appeal from a justice's court on questions of fact or on questions of both law and fact (Code Civ. Proc., sec. 976), where, justifiably or not, he may present a 'skeleton' case in the lower court and reserve the real showing on the merits for the trial in the superior court. And such a trial is not governed by the rules applicable to the statutory review of the action of the Board of Governors of The State bar in which this court exercises an independent judgment solely on the facts contained in the record before the board."[19]

The limited and qualified de novo hearing in a mandamus action partakes more of the nature of a review than of a new trial, and it is only required in those cases where a fundamental vested right is involved. Since REA does not contend it has a vested right to the development permit in the present case (Pub. Resources Code, § 27404; *San Diego Coast Regional Com.* v. *See The Sea, Limited,* 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129]), a limited de novo hearing is not appropriate.

The case of *People of St. of Cal.* ex. rel. *Younger* v. *Tahoe Reg. P. Ag.* (9th Cir. 1975) 516 F.2d 215 (cert. den. Oct. 6, 1975) is of no help to REA. That decision is based solely on interpretation of the 1968 California-Nevada Compact, which created the Tahoe Regional Planning Agency (Gov. Code, § 67000 et seq.) However, two of the provisions of the compact are somewhat similar to the provisions of the Coastal Act. Article III(g) of the compact provides in pertinent part that "a majority vote of the members present representing each state shall be required to take action with respect to any matter. . . ." Article VI(k) provides: "Whenever . . . the agency is required to review or approve any proposal . . . the agency shall take final action, whether to approve, to require modification or to reject such proposal, within 60 days after such proposal is delivered to the agency. If the agency does not take final action within 60 days, the proposal shall be deemed approved." Following a hearing before the TRPA, a motion to approve two development projects was made, as well as a motion to deny both projects. The California members (five) all voted to deny the permit. The vote of the Nevada members was split, three in favor of granting the permit, and two against. As a result of the vote, plans were made to commence construction on the projects. California then brought suit to enjoin construction. The court denied California's motion for a preliminary injunction, reasoning that the voting did not constitute "action"

---

[19]The administrative appeal herein is also similar to a small claims appeal, where "[o]n appeal the action shall be tried anew." (Code Civ. Proc., § 117j.) (See 6 Witkin, Cal. Procedure, Appeal, § 24, pp. 4041-4042.)

within the meaning of the compact, and that the TRPA's failure to take action resulted in the projects being deemed approved under Article VI(k). California had argued that Article III(g) should be interpreted to read that if a motion does not receive a positive vote from the majority of both states, then the proposal should fail. The Ninth Circuit affirmed the decision of the district court.

The present case is distinguishable from the *TRPA* case because Public Resources Code section 27423, subdivision (c), specifically provides that the State Commission must have a de novo hearing and decide the appeal in the same manner and by the same vote as the Regional Commission. Sections 27400 and 27224 provide that at least an affirmative vote of the majority of the State Commission is required to grant a permit.[20]

The superior court is directed to vacate its order dated October 23, 1974, in case No. C83286 and to enter a new and different order to conform with the views expressed in this opinion.

The judgment is reversed; costs to appellants.

Hastings, J., concurred.

---

[20]In *TRPA*, the court recognized that "the Compact and the TRPA [Tahoe Regional Planning Agency] are sui generis offsprings of a marriage between sovereign partners, each extremely reluctant to relinquish its sovereignty over a portion of its territory." Such is not the case of the Coastal Zone Commissions. There is but one state involved—California; there is solely one purpose to achieve: to preserve the ecology of California's natural resources.

The *TRPA* court recognized that "[g]enerally, once a quorum is present, any vote by an organization on any proposal is considered 'action.' Thus, if there is a proposal on the floor for approval of a new meeting time, and it fails to gain a majority vote (e.g., the vote ends in a tie), 'action' has been taken and the proposal is considered *rejected.* See Robert's Rules of Order Newly Revised § 43 (1970). Consistent with this parliamentary rule are numerous decisions by courts holding that tie votes by zoning boards or other governmental bodies have the effect of *denying* the proposals before them. [Citations.]" (*Id.,* at p. 218.) (Parenthenthetically, we note that tit. 14 of the Admin. Code, § 13152 states: "Except as provided by the provisions of Division 18 of the Public Resources Code or of these regulations, or when the Commission determines otherwise, each Commission shall operate under Robert's Rules of Order.") The *TRPA* court then looked to the "provisions of the unique statutory scheme." It concluded that "neither the statutory nor regulatory scheme requires that a proposed project gain the approval of the TRPA before it is built." (*Id.,* at p. 219.) The Coastal Act differs substantially from the TRPA scheme: an affirmative, majority vote of the State Commission *is* required for the grant of the building permit once the appeal is before that body for action.

We conclude that any seeming similarity between the *TRPA* case and the instant case is illusory.

**ASHBY, J.**—I dissent.

The conclusion reached by the majority is based on two erroneous premises. The first is that *upon the filing* of a notice of appeal[1] from the decision of the Regional Commission, that decision becomes a nullity. The second is that the tie vote by the membership of the State Commission constitutes action.

Stripped of its embellishments, appellant's circular argument goes like this: The act provides that on appeal there *shall* be a de novo hearing in the same manner and vote as the Regional Commission hearing. A hearing de novo is a new hearing, thus the decision of the Regional Commission is a nullity. Because the Regional Commission decision is a nullity and the word "shall" is mandatory, the State Commission is required to cast at least "seven votes for the issuance of a permit." Since there was no majority vote by the State Commission for issuance of the permit, there in effect was a denial. A denial is an action taken. Therefore neither California Administrative Code, title 14, section 14000,[2] nor Public Resources Code section 27423, subdivision (b),[3] applies.

Appellant's argument is valid only if the Regional Commission's decision becomes a nullity upon the filing of the notice of appeal. But this theory obviously disregards Administrative Code section 14000, which specifically and expressly provides that the operation and effect of the permit is merely suspended until final action is taken by the State Commission. If the permit is only suspended, then it of course does not become a nullity upon the filing of an appeal to the State Commission. It can become a nullity only if the State Commission takes action contrary to the action of the Regional Commission. Since the State Commission has plenary power to decide the appeal, it can substitute its contrary determination for that of the Regional Commission, and, if it does, the Regional Commission action becomes a nullity. For example, the

---

[1] Although the majority speaks of acceptance of the appeal rather than the filing of notice, the operative act is the filing of a notice of appeal, not an acceptance. The reason for this is that the State Commission must hear every appeal unless by a majority vote of its membership it declines to hear it. In other words, the State Commission does not accept appeals, it can only decline to hear them if they present no substantial issue.

[2] "The filing of an appeal from any . . . decision of a Regional Commission granting a permit . . . shall suspend the operation and effect of such . . . decision, or permit until *final action on said appeal by the Commission.*" (Italics added.)

[3] ". . . If the [state] commission *fails to act* within 60 days after notice of appeal has been filed, the regional commission's decision shall become final." (Italics added.)

Unless otherwise indicated, all section references are to the Public Resources Code.

Regional Commission denies a permit and the State Commission votes to issue it or the Regional Commission issues a permit and the State Commission votes to deny it, in either situation the *majority* vote of the State Commission would be final action and would nullify the decision of the Regional Commission. But the decision of the Regional Commission does not become a nullity unless the State Commission takes action. (§ 27423, subd. (b).) To take action, the State Commission must have a majority vote.

Appellant's next contention, which is inconsistent with its first contention, is that the permit is no longer suspended because the State Commission took action by its tie vote.

Appellant's justification for its argument that a tie vote is action because it is in effect a denial cannot withstand analysis. If appellant is correct then any vote less than a majority vote is action since it also is in effect a denial. Under appellant's theory, even the failure to vote because of the lack of a quorum would be action because it too would in effect be a denial. In other words, appellant is actually arguing that there can never be a situation in which the State Commission would take no action. This interpretation makes totally meaningless that portion of section 27423, subdivision (b), which provides that "[i]f the [state] commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final."

## THE PROBLEM

In the instant case, appellant is urging a zoning *ordinance* approach to what is a *use permit* situation. The majority has been led into its error by appellant's confusion of basic land-use permit procedures.[4] This appeal

---

[4]The procedures set forth in the Coastal Act are not unique. They are based on and follow the traditional land-use procedural scheme.
BASIC LAND-USE PROCEDURES
Zoning law involves the use of land. Land use is controlled by zoning and permits. Cities and counties are legislative bodies and each has a planning commission. (Gov. Code, § 65100.) Both the planning commission and the legislative body are involved in zoning and the issuance of use permits.
1. *Zoning Ordinances.*
Zoning is accomplished by the enactment of a zoning ordinance which is a legislative act. (*Johnston* v. *City of Claremont,* 49 Cal.2d 826, 834-835 [323 P.2d 71]; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990]; Gov. Code, § 65851.) An applicant landowner desiring to have his land zoned or the zone changed files an application with the planning commission. The planning commission holds hearings and makes a recommendation to the legislative body. The determination of the planning commission requires a majority vote. The implementation of that action requires a

involves quite a simple problem which becomes complex only when the plain meaning of the act is disregarded to reach the result urged by appellant.

The issue presented by this appeal is this: When a permit is issued by the affirmative majority vote of the Regional Commission, does a tie vote by the State Commission on appeal constitute a final action or does the decision of the Regional Commission become final.

## DISCUSSION

If effect is given to the plain meaning of the Coastal Act, no construction is necessary; but, even so, in construing legislation, its various provisions must be construed to harmonize its parts and sections so that no word, phrase, or provision is rendered unnecessary or meaningless. (*Mercer* v. *Perez,* 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; *County of Sacramento* v. *Superior Court,* 20 Cal.App.3d 469, 472 [97 Cal.Rptr. 771]; *Wemyss* v. *Superior Court,* 38 Cal.2d 616, 621 [241 P.2d 525]; *Prager* v. *Isreal,* 15 Cal.2d 89, 93 [98 P.2d 729]; *People* v. *Gilbert,* 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].)

The law is very clear. All permits are issued by the Regional Commission. "[A]ny person wishing to perform any development within the permit area *shall* obtain a permit authorizing such development *from the Regional Commission. . . .*" (§ 27400; italics added.) In order to obtain such a permit, the application must be approved by either the Regional Commission *or* the State Commission. ". . . no permit shall be issued without the affirmative vote of a majority of the total authorized

---

majority vote of the legislative body. If the legislative body fails to act by an affirmative majority vote, there is no ordinance and the application in effect is denied. (See *Richter* v. *Board of Supervisors,* 259 Cal.App.2d 99, 106 [66 Cal.Rptr. 52].

2. *Use Permits.*

Each type of zoning permits certain uses. Other uses may be made of the property if a permit is obtained. To obtain a permit the landowner must make application to the planning commission. (Gov. Code, §§ 65901, 65902.) A hearing is held and a decision is made by the planning commission by a majority vote to grant or deny the permit. In the absence of an appeal, the decision of the planning commission is final. Although the authority to issue the permit is with the planning commission, the legislative body has the power to review. Upon the filing of an appeal, the decision of the planning commission is suspended. The reviewing power of the legislative body is plenary and the hearings they conduct are de novo. This function is administrative rather than legislative. They can affirm, reverse, or modify the decision of the planning commission. (Gov. Code, §§ 65903, 65904.) To do so, however, they must take action. If no action is taken within the period of time specified in the ordinance, the decision of the planning commission becomes final.

membership of the regional commission, or of the commission on appeal." (§ 27400.)

The reason for the language "or of the commission on appeal" is that the situation frequently arises where the Regional Commission does not affirmatively vote to issue a permit to the applicant. Thus, in order to obtain the permit from the Regional Commission, the applicant must gain the approval of the State Commission by an affirmative vote. The procedure to be used is set forth in the act as an appeal. "An applicant . . . may appeal to the commission." (§ 27423.) The State Commission is required to hear the appeal unless it determines that the appeal raises no substantial issue. (§ 27423, subd. (c); Cal. Admin. Code, tit. 14, § 13920.)

There are two types of appeals under the Coastal Act. (§ 27423, subd. (a); see also Cal. Admin. Code, tit. 14, § 13900.)

1. By the applicant from a denial.

2. By a person aggrieved by the issuance of a permit.

Where the *applicant appeals from a denial* by the Regional Commission, the applicant must receive the affirmative vote of the State Commission or no permit will be issued by the Regional Commission. *This, however, is not the case before us.*

The instant case involves a type two appeal. Since the applicant has already obtained its permit from the Regional Commission upon its affirmative majority vote to issue, the issuance of the permit is not dependent upon the affirmative vote of the State Commission. (§ 27400.)

Upon the filing of the appeal by a *person aggrieved,* the decision of the Regional Commission to issue the permit is suspended until the State Commission takes final action. "The filing of an appeal from any . . . decision of a Regional Commission *granting* a permit . . . *shall suspend the operation and effect* of such . . . decision, or permit *until final action* on said appeal by the Commission." (Cal. Admin. Code, tit. 14, § 14000; italics added.)

In hearing the appeal, the State Commission conducts a full hearing not limited to the evidence before the Regional Commission. The State Commission may exercise its discretion in considering the evidence in resolving conflicts in the evidence and may affirm or substitute its own

judgment for that of the Regional Commission and reverse or modify that decision.[5]

In order to reach its conclusion that the decision of the Regional Commission is a nullity, appellant argues that the "appeal to the State Commission is not an 'appeal' . . ., but merely the description of another forum for approval of an applicant's permit."[6] Appellant bases this argument on the provisions of section 27423, subdivision (c), which provides for "a *de novo* public hearing . . . decided in the same manner and by the same vote as provided for decisions by the regional commissions." (Italics added.)

Appellant seizes upon the words "de novo hearing" to bolster its argument that the decision of the Regional Commission became a nullity once the matter was appealed to the State Commission. It argues that "[a] hearing de novo is literally a new hearing. It contemplates an entire trial of the controverted matter in the same manner in which it was originally heard. The decision therein is binding on the parties and takes the place of, and completely nullifies, the former determination of the matter. . . ."

De novo hearings are the norm in zoning and permit matters, e.g., *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, 38 [56 Cal.Rptr. 672, 423 P.2d 824]; *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 313 [144 P.2d 4]; *City & County of S. F.* v. *Superior Court,* 53 Cal.2d 236, 248 [1 Cal.Rptr. 158, 347 P.2d 294]. The fact that the hearing before the State Commission is de novo does not mean that the action of the Regional Commission becomes a nullity merely because of the appeal. It means that the function of the State Commission is not limited to reviewing the record for errors or substantiality of the evidence, or merely determining whether or not the Regional Commission abused its discretion. De novo hearing means that the State Commission may hear all evidence submitted and is not limited

[5]One reason the State Commission was given plenary power of review is that it must consider the state-wide aspects of the permit.

[6]Appellant's contention is in direct conflict with the proposal submitted to the electorate. The argument in the "Detailed Analysis by the Legislative Counsel" which was submitted to the voters in November 1972 contained the following pertinent paragraph:

"4. Beginning February 1, 1973, *require a permit from a regional commission* for any proposed development (with specified exemptions) within the 'permit area,' defined, generally, as that portion of the coastal zone lying between the seaward limit of the jurisdiction of the state and 1,000 yards landward from the mean high tide line, subject to various exceptions. *Provision is made for appeals to the state commission* and to the courts." (Italics added.)

to the evidence before the Regional Commission. It further means that the State Commission may exercise its discretion in considering the evidence resolving conflicts within its discretion and, if reasonable, substitute its judgment for that of the Regional Commission. What appellant fails to understand is that there is no inconsistency between the concept of a hearing de novo by the State Commission and the fact that the decision of the Regional Commission is merely suspended by the appeal. Where there is a de novo hearing, the determination of the permit issuing agency does not become a nullity merely because its decision was appealed. It becomes a nullity *only* when the appellate body makes a judgment and *takes an action which is contrary* to the decision of the issuing body. (See *Collier & Wallis, Ltd.* v. *Astor,* 9 Cal.2d 202 [70 P.2d 171].)

Appellant's argument completely disregards Administrative Code section 14000 which provides: "The filing of an appeal from any order or decision of a Regional Commission granting a permit or claims of exemption, *shall suspend the operation and effect of such order, decision, or permit until final action on said appeal by the Commission. . . .*" (Italics added.) It also disregards section 27423, subdivision (b), which provides that "[i]f the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final." It is clear that the decision of the Regional Commission was not intended to be a nullity. The act is very clear that that decision is held in abeyance until a final action is taken by the State Commission.

There is no validity to appellant's argument that "in the same manner and by the same vote as provided for decisions by the regional commissions" means that the State Commission can only grant or deny a permit and by not granting it must be denying the permit. This language merely means that the hearing procedures are the same and a majority vote is necessary for action. It does not mean that the State Commission can only "grant or deny" when an appeal is heard from the issuance of a permit. The grant or deny wording applies only to type one appeals where no permit has been issued by the Regional Commission. Where the appeal is type two, as in the instant case, the action of the State Commission as prescribed by section 27423, subdivision (b), is to "affirm, reverse, or modify the decision of the regional commission." Where general and specific provisions are inconsistent and cannot be reconciled, the specific provision controls. (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 637 [268 P.2d 723]; *Rose* v. *State of California,* 19 Cal.2d 713, 723-724 [123 P.2d 505]; *In re Marquez,* 3 Cal.2d 625, 629 [45 P.2d 342]; Code Civ. Proc., § 1859.)

Appellant's argument gives no effect to the portion of section 27423, subdivision (b), which provides that the "commission may affirm, reverse, or modify the decision of the regional commission." Appellant argues that "[t]he terms are merely descriptive and should only be used to characterize a determination parallel or contrary to that of the regional commission. Certainly inquiry into the proper interpretation of a word cannot solely be guided by its legal use." If appellant is correct in maintaining that the decision of the Regional Commission is a nullity, then section 27423, subdivision (b), has no meaning since there would be nothing for the State Commission to "affirm, reverse, or modify."

The language which appellant so lightly dismisses is the standard wording of zoning and permit appeals provisions. For example, Government Code section 65903 authorizes the creation of boards of appeals for local agencies and provides as follows:

"A board of appeals, if one has been created and established by local ordinance, shall hear and determine appeals from the decisions of the board of zoning adjustment or the zoning administrator, as the case may be. Procedures for such appeals shall be as provided by local ordinance. *Such board may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from,* and may make such order, requirement, decision, or determination as should be made, and such action shall be final."[7] (Italics added.)

Appellant's argument that the lack of a majority vote by the membership of the State Commission is action is not valid. The Attorney

---

[7] An example of this standard approach in a charter jurisdiction is found in *Lindell Co. v. Board of Permit Appeals,* 23 Cal.2d 303 [144 P.2d 4]. There a writ of mandate was sought to compel the San Francisco Board of Permit Appeals to rescind its action overruling the issuance of building permits to the petitioner and to reinstate the permit and to affirm the action of the central permit bureau in granting them. The ordinance defining the authority of board of permit appeals provided as follows:

" 'Any applicant for a permit . . . or any person who deems that his interest or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, . . . After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused.' " (23 Cal.2d at p. 313.)

The Supreme Court in *Lindell* upheld the action of the board of permit appeals and denied the writ.

General made a similar argument in *People of St. of Cal.* ex rel. *Younger* v. *Tahoe Reg. P. Ag.,* 516 F.2d 215 (9th Cir. 1975), (cert. den., 423 U.S. 888 [46 L.Ed.2d 97, — S.Ct. —]). The Ninth Circuit Court of Appeals rejected that argument. In *TRPA,* the applicant obtained the approval of the Nevada Tahoe Regional Planning Agency for the building of two projects. Although, as in the instant case, the TRPA was not the permit issuing authority, it had appellate authority to review the issuance of those permits. TRPA's land use ordinance section 4.32 provided: "Administrative permits and variance permits . . . issued by the permit-issuing authority shall be subject to Agency review, and upon review of any such permit the Agency shall take final action, whether to approve, to require modification or to reject such permit within 60 days after such permit is delivered to the Agency. If the agency does not take final action within 60 days, the permit shall be deemed approved."

The vote of the TRPA was a tie. The Attorney General argued there, as he does in the instant case, that the tie vote amounted to a denial. The Circuit Court of Appeals rejected this argument holding that:

"Under the TRPA statutory and regulatory scheme, variance and use permits must be submitted for review to the TRPA, and the TRPA has broad discretion to reject or approve on the merits each building permit request. However, *the TRPA's power of de novo review is fully exercised only when a dual majority for or against a proposal is reached.*

"When a split vote is registered, the TRPA assumes a different posture, and becomes more like an appellate court than a zoning board. If an appellate court cannot agree on a majority decision, then the lower body's decision stands affirmed—the rationale being that no 'decision' has been reached by the higher authority. *Cf.* State Department of Ecology v. City of Kirkland, 84 Wash.2d 25, 523 P.2d 1181, 1184 (1974). Similarly, in this case where no dual majority was mustered for either approval or rejection, we conclude that *no 'decision' was ever rendered nor 'final action' ever taken by the TRPA. By virtue of Article VI(k) which provides in such a case that the project be deemed approved, the decision of the local permit issuing authority in effect stands affirmed.*" (*Id.* at p. 219; italics aded.)

*TRPA* is directly in point.[8] There as in the instant case the issuance of a permit was by a body other than the reviewing body. Secondly, the

---

[8]It is noted that the Attorney General did not even mention *TRPA* even though it was decided prior to the filing of the appellant's reply brief.

TRPA had the appellate power of de novo review as does the State Commission in the instant case. In both cases, there were tie votes and as a consequence no action was taken. Both the Tahoe Act and the Coastal Act provide that where no action is taken within the prescribed period the decision of the subordinate body becomes final.

Finally, appellant argues that its contemporaneous administrative construction of the act is entitled to great weight and should be controlling. Certainly the administrative practice of the State Commission is entitled to weight but it is not controlling in the present situation where it is so clearly not in accordance with the plain meaning of the statutes. " '[A]lthough contemporaneous construction by officials charged with the administration of a statute or ordinance is given great weight, "final responsibility for the interpretation of the law rests with the courts. 'At most administrative practice is a weight in the scale, to be considered but not to be inevitably followed.' " (*Whitcomb Hotel* v. *California Emp. Com.,* 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405], quoting from *F. W. Woolworth Co.* v. *United States,* 91 F.2d 973.) The rule of contemporaneous construction may not be applied when the wording of the statute or ordinance, as in the present case, clearly calls for a different construction. (*California Drive-in Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028].)' (*Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 74-75 [187 P.2d 686]; see also *Goodwill Industries* v. *County of Los Angeles* (1953) 117 Cal.App.2d 19, 26 [254 P.2d 877].)" (*Atlantic Oil Co.* v. *County of Los Angeles,* 69 Cal.2d 585, 599 [72 Cal.Rptr. 886, 446 P.2d 1006].)

CONCLUSION

The State Commission cannot take action without the vote of a majority of its membership. (Cal. Admin. Code, tit. 14, § 13152.) The tie vote resulted in a failure by the State Commission to act within 60 days after the filing of notice of appeal as prescribed by section 27423, subdivision (c), as extended by agreement of REA and appellant. (*Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.,* 48 Cal.App.3d 99, 112 [121 Cal.Rptr. 650].) Therefore, as provided in that section, "the regional commission's decision shall become final."

I would affirm the judgment.

On November 13, 1975, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied December 24, 1975. Clark, J., was of the opinion that the petition should be granted.