[No. B116680. Second Dist., Div. One. Feb. 27, 1998.]

TRANCAS PROPERTY OWNERS ASSOCIATION, Plaintiff and Appellant, v.
CITY OF MALIBU et al., Defendants and Respondents.

COUNSEL

Stephen L. Jones for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Richard M. Frank, Assistant Attorney General, Clara L. Slifkin, Deputy Attorney General, Christi Hogin, City Attorney, Alan Robert Block, Ferguson, Case, Orr, Paterson & Cunningham and Glen M. Reiser for Defendants and Respondents.

OPINION

**VOGEL (Miriam A.), J.**—The question in this case is this: To determine whether a development permit issued by the California Coastal Commission was "activated" before its expiration date, should we interpret "project" and "construction" to mean the same thing? Our answer is "no."

### BACKGROUND

In March 1992, following more than ten years of environmental review, the California Coastal Commission granted a "Coastal Development Permit"

to Lunita Pacific, L.L.C. for the construction of a condominium project in the City of Malibu. By its terms, the permit provided that "[i]f development has not commenced, the permit will expire" on a date subsequently extended to March 12, 1997. Lunita's final subdivision map was accepted by the City of Malibu's engineer in July 1996 and filed with the City's clerk on August 12 (seven months before the permit's expiration date). When the Malibu City Council nevertheless refused to approve Lunita's final subdivision map, Lunita sued the City and won. That case was settled and on September 8, 1997 (after the permit's expiration date), the City Council approved Lunita's final subdivision map. On September 10, the Trancas Property Owners Association filed this declaratory relief action against Lunita, the City of Malibu and the Coastal Commission, alleging that Lunita's permit expired on March 12, 1997, and asking for an injunction to stop Lunita's construction. The association's motion for a preliminary injunction was denied. It appeals.

### DISCUSSION

██ Although the permit was to expire on March 12, 1997, only if "*development* ha[d] not commenced" by that date, the Association contends that, pursuant to the Coastal Commission's regulations (Cal. Code Regs., tit. 14, § 13001 et seq.),[1] a coastal permit is not "exercised" or "activated" until the developer has "commenced *construction*." Since it is undisputed that construction was not commenced by March 12, the Association contends the permit expired on that date. We disagree.

Section 13156 lists the things that must be included in all coastal development permits. According to subdivision (g) of section 13156, all permits "*shall*" include "[*t*]*he time for commencement of the project* except that where the [Coastal C]ommission on original hearing or on appeal has not imposed any specific time for *commencement of construction* pursuant to a permit, the time for *commencement* shall be two years from the date of the [C]ommission vote upon the application. Each permit shall contain a statement that any request for an extension of the time of commencement must be applied for prior to expiration of the permit." (Italics added.) There is more than one way to read this language.

The Association says that "commencement of the project" and "commencement of construction" have the same meaning, and that the third non-limited "commencement" relates back to both "project" and "construction." In the Association's view, "construction" is the dispositive word, not

---

[1]Unless otherwise stated, all section references are to Title 14 of the California Code of Regulations.

"project," a conclusion that finds some support in section 13169, which authorizes a permittee to apply for an extension prior to the "commencement of construction under a permit." Since "construction" did not commence before the expiration date, the Association contends the permit expired before it was "activated."

Lunita says that "project" and "construction" are not interchangeable, that the Coastal Commission must specify the date for commencement of the "project" (the "general rule," according to Lunita, is that the permit "shall" include "[t]he time for commencement of the project"), but that if the Commission nevertheless fails to do so and also fails to set a specific date for commencement of "construction," the "exception" applies and the "project" must be commenced within two years after the permit application is approved. In Lunita's view, the Commission's designation of a date for "commencement of development" brings Lunita's permit within the "general rule." Since Lunita's final subdivision map was approved on August 12, 1996, and since the Malibu City Council should have promptly rubber-stamped that approval (as determined in the first lawsuit), the project was commenced about seven months before the permit expired.

The Coastal Commission says that "construction" and "project" have different meanings and that the former is more limited than the latter. Here, as in other cases, it is the Commission's view that "where the applicant has diligently performed all the acts necessary to carry out the conditions of the permit, it would be unfair to require the applicant to obtain a permit extension [as permitted by the permit and also by section 13169]." According-ing to the Commission, the City engineer's approval of Lunita's final subdivision map is the date on which the project commenced, and the permit was therefore "effectuated" before it expired.

All three parties offer facially sound arguments for acceptance of their interpretations and rejection of all others. We have tried other approaches. None withstand scrutiny. There is no plain meaning to this regulation and we have no crystal ball to shed light on any legislative intent.

Accordingly, we opt for the elegance of simplicity in lieu of the gaudy complexities created by convoluted efforts to reconcile this regulation with all or any part of the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) or with the other regulations. We hold without further elaboration that the use of different words in the regulation suggests that different meanings were intended (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 507 [247 Cal.Rptr. 362, 754 P.2d 708]), and that this is an appropriate case for deference to the Coastal Commission's

interpretation of a regulation within its purview (*REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611 [125 Cal.Rptr. 201]; *Westfall* v. *Swoap* (1976) 58 Cal.App.3d 109, 114 [129 Cal.Rptr. 750]). If they who must be obeyed intended a different result, the regulation can be amended.[2]

Accordingly, we hold that Lunita's project commenced on August 12, 1996, about seven months before the permit's expiration date. It follows that the Association's motion for a preliminary injunction was properly denied.

DISPOSITION

The order is affirmed.

Spencer, P. J., and Ortega, J. concurred.

A petition for a rehearing was denied March 18, 1998, and appellant's petition for review by the Supreme Court was denied May 27, 1998.

---

[2]Although the Coastal Commission does not say, we assume that it drafted section 13156. Subject to certain exceptions, Public Resources Code section 30333 authorizes the Commission to adopt "rules and regulations" to "carry out the purposes" of the Coastal Act and to "govern procedures" of the Commission, all of which "shall be consistent with" the Coastal Act and "other applicable law." The adoption of such rules and regulations follows the procedures set out in section 11340 et seq. of the Government Code. (See Pub. Resources Code, § 30333.) In section 11340 of the Government Code, the Legislature describes the problems created by an unprecedented increase in the number of administrative regulations and the problems with regulatory language that is "unnecessarily complex" and "confusing." In section 11340.1 of the Government Code, the Legislature established the Office of Administrative Law to review administrative regulations and to improve their quality, but made it clear that "[i]t is the intent of the Legislature that neither the Office of Administrative Law nor the court should substitute its judgment for that of the rulemaking agency as expressed in the substantive content of adopted regulations. It is the intent of the Legislature that while the Office of Administrative Law will be part of the executive branch of state government, that the office work closely with, and upon request report directly to, the Legislature in order to accomplish regulatory reform in California." Under these circumstances (that is, where the Coastal Commission is the rulemaking agency, and the regulation is not inconsistent with the Coastal Act), our deference to the Coastal Commission's interpretation appears particularly appropriate. (*Westfall* v. *Swoap, supra,* 58 Cal.App.3d at p. 114 [courts respect the interpretation given a statute by the agency charged with its administration, and afford even "greater deference" when construing an administrative regulation].)