[No. B202008. Second Dist., Div. Eight. Dec. 29, 2008.]

DANIEL ALBERSTONE et al., Plaintiffs and Appellants, v. CALIFORNIA COASTAL COMMISSION, Defendant and Respondent; JEFF STIBEL, Real Party in Interest and Respondent.

**COUNSEL**

Bingham McCutchen and Roland Tellis for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Christina Tiedemann, Acting Assistant Attorney General, Jamee Jordan Patterson and Hayley Peterson, Deputy Attorneys General, for Defendant and Respondent.

Block and Block, Alan Robert Block, Michael N. Friedman and Justin Michael Block for Real Party in Interest and Respondent.

OPINION `

**BIGELOW, J.**—Daniel Alberstone and Lisa Ogawa appeal from the denial of their petition for writ of mandate, which sought to compel the California Coastal Commission (the Commission) to hear de novo their neighbor's application to develop the vacant lot next to appellants' home in Malibu. We affirm.

## FACTS

Appellants own a home located at the end of Escondido Beach Road in Malibu. On November 8, 2004, real party in interest Jeff Stibel applied to the City of Malibu (the City) to build a 3,578-square-foot single-family beach-front home on the vacant lot next to appellants' property, plus a 457-square-foot garage, an alternative onsite septic system, and a bulkhead on the sandy beach. During the application process, a question arose as to whether Stibel's land consisted of one or two parcels. A previous owner applied to the Los Angeles County Assessor to consolidate the parcel numbers, but a permit was never issued by the Commission.

Appellants met with the City staff throughout 2005 and submitted correspondence outlining their objections to the development. In a letter dated January 23, 2006, appellants objected to the development on the grounds it violated the City's Certified Local Coastal Program (LCP) because (1) it would require the construction of protective devices that would contribute to shoreline erosion or alter natural land forms; (2) it would require shoreline protection or bluff stabilization structures during the full 100 year economic life of the development; and (3) it was well below the minimum lot width requirements.

On February 6, 2006, the Malibu Planning Commission approved the development upon a recommendation by the City staff. Appellants appealed the Malibu Planning Commission's decision to the Malibu City Council. The appeal was denied on May 22, 2006. Appellants further appealed to the Commission, which found the appeal failed to raise a "substantial issue" and declined to hear the matter.

Appellants then petitioned the trial court for a writ of administrative mandamus to compel the Commission to hear their appeal and consider Stibel's application de novo. The trial court found the Commission's refusal

to hear appellants' appeal was not contrary to law or an abuse of discretion, and was supported by substantial evidence in the administrative record. This appeal followed. Both the Commission and Stibel have submitted briefs in response.

## DISCUSSION

### I. *Standard of Review*

Public Resources Code section 30801 gives appellants the right to judicial review of a decision by filing a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. (*La Costa Beach Homeowners' Assn. v. California Coastal Com.* (2002) 101 Cal.App.4th 804, 814 [124 Cal.Rptr.2d 618].) "The inquiry in such a case . . . extend[s] to the questions whether the [Commission] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [Commission] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b); see *Eden Hospital Dist. v. Belshé* (1998) 65 Cal.App.4th 908, 915–916 [76 Cal.Rptr.2d 857]; Pub. Resources Code, § 30801.)

Given this directive, the trial court presumes that the agency's decision is supported by substantial evidence, and the party challenging that decision bears the burden of demonstrating the contrary. (*Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 336 [25 Cal.Rptr.2d 842].) In reviewing the agency's decision, the court examines the whole record and considers all relevant evidence, including that evidence which detracts from its decision. (*Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 503 [83 Cal.Rptr.2d 850].) "Although this task involves some weighing to fairly estimate the worth of the evidence, that limited weighing does not constitute independent review where the court substitutes its own findings and inferences for that of the Commission. Rather, it is for the Commission to weigh the preponderance of conflicting evidence, as [the court] may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it." (*Kirkorowicz v. California Coastal Com.* (2000) 83 Cal.App.4th 980, 986 [100 Cal.Rptr.2d 124]; see *Sierra Club v. California Coastal Com.* (1993) 12 Cal.App.4th 602, 610 [15 Cal.Rptr.2d 779].)

On appeal from the denial of a petition for writ of mandate, our role is identical to that of the trial court with respect to the administrative record. That is, both the trial and appellate courts must determine whether the record is free from legal error. Thus, the trial court's conclusions and disposition of the issues are not conclusive on the court of appeal. (*Sierra Club v. California Coastal Com.* (1993) 19 Cal.App.4th 547, 557 [23 Cal.Rptr.2d 534].)

In spite of this, appellants first focus on what they perceive to be errors made by the trial court in denying their petition for writ of mandate. In particular, appellants argue the trial court's factual conclusions were not supported by substantial evidence. Given the authorities cited above, it is clear that our role is not to review the trial court's decision or reasoning and we need not address appellants' contentions of error by the trial court. We now turn to the remaining issues raised by this appeal.

## II. *No Substantial Issue Raised by Appellants*

As previously noted, appellants appealed the approval of the development to the Commission. The Commission found the appeal failed to raise a substantial issue and declined to hear the matter. Appellants contend substantial issues were presented by their appeal to the Commission and that it erred by failing to hear them. We disagree.

Public Resources Code section 30625, subdivision (b)[1] requires the Commission to hear an appeal from a decision of a local government unless it finds no substantial issue was raised. Appellants contend two substantial issues were presented by their appeal to the Commission. First, they argue the development violates former section 10.4R. of the Malibu LCP Local Implementation Plan (LIP),[2] which prohibits the development of land divisions unless it can be shown the new lot can be developed without a shoreline protective structure. Appellants argue the development violates former section 10.4R. of the LIP because it merges two lots and includes a bulkhead in the plans. Second, appellants argue the merged lot fails to conform to the lot size requirements of the LCP.

It must first be noted that the question here is not whether appellants' appeal raises *any issue* but whether it raises *a substantial one*. A substantial issue is defined as one that presents a "significant question" as to conformity

---

[1] All further undesignated section references will be to the Public Resources Code.

[2] The LIP is part of the City's LCP. Former section 10.4R. of the LIP is currently numbered section 10.4Q.

with the certified local coastal program. (Cal. Code Regs., tit. 14, § 13115.) We review the Commission's determination of whether a substantial issue has been raised for abuse of discretion; we grant broad deference to the Commission's interpretation of the LCP since it is well established that great weight must be given to the administrative construction of those charged with the enforcement and interpretation of a statute. (Code Civ. Proc., § 1094.5, subd. (b); see *People ex rel. Cal. Regional Wat. Quality Control Bd. v. Barry* (1987) 194 Cal.App.3d 158, 171 [239 Cal.Rptr. 349] (*Wat. Quality Control Bd.*); *REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611 [125 Cal.Rptr. 201] (*REA Enterprises*).)[3] We will not depart from the Commission's interpretation unless it is clearly erroneous. (*REA Enterprises, supra*, 52 Cal.App.3d at p. 611.)

Further, appellants' reliance on *Wat. Quality Control Bd., supra*, 194 Cal.App.3d at page 171 for the proposition that section 30603, subdivision (b)(1), by using the word "appeal" rather than "petition," mandates de novo review by the Commission whether the issue is substantial or not ignores the express directive in section 30625, subdivision (b)(1) that "[t]he commission shall hear an appeal unless it determines . . . : [¶] . . . that no substantial issue exists as to conformity with [local coastal programs]." While section 30603 describes the circumstances under which an aggrieved person has the right to appeal, section 30625 clearly specifies when the Commission must hear that appeal. Finally, appellants provide no legal citation for their argument that the term "substantial" is "clearly meant to address the Legislature's concern that the Commission not be bogged down with appeals that are either frivolous or otherwise without possible merit."

With these principles in mind, we agree with the Commission that neither of appellants' points present a substantial issue that required the Commission to review Stibel's application de novo.

### A. *Lot Merger*

Former section 10.4R. of the LIP provided: "Land divisions, including subdivisions, lot splits, lot line adjustments, and certificates of compliance which create new beachfront or blufftop lots, shall not be permitted unless the

---

[3] We also reject appellants' reading of *REA Enterprises, supra*, 52 Cal.App.3d at page 611. The *REA Enterprises* court did not limit its holding to the circumstances of the case. Indeed, *REA Enterprises* has been cited by other courts for the proposition that deference is accorded to the administrative construction of a statute. (See *Trancas Property Owners Assn. v. City of Malibu* (1998) 61 Cal.App.4th 1058, 1061 [72 Cal.Rptr.2d 131].)

subdivision can be shown to create lots which can be developed without requiring a bluff or shoreline protection structure. No new lots shall be created that could require shoreline protection or bluff stabilization structures at any time during the full 100 year economic life of the development." Under the LIP, "land divisions" include the merger of parcels. (LIP, § 2.1.) Appellants urge a strict construction of LIP section 10.4R. They argue that because the term "land divisions" includes mergers, the development should not be permitted because it includes a bulkhead.

The Commission offers a different interpretation of former section 10.4R. of the LIP. "[W]ith regard to the lot mergers, staff is in a unique position here of knowing the intent of the LCP policy, since we wrote the policies. [¶] [In] Policy 10.4.R[,] we, specifically, left out lot mergers from that provision because we wanted to encourage the consolidation of lots where development, or a home was developed over multiple parcels. We wanted those parcels to be merged together, otherwise, the applicant could just build over two parcels, and this [merger] would decrease the overall density along the shoreline, and so that is the rationale behind 10.4.R of why we left out lot mergers."

The Commission staff concluded, "The language of LIP Section 10.4 R specifically lists those land divisions that are subject to its requirements as: '*subdivisions, lot splits, lot line adjustments, and certificates of compliance.*' So, while mergers are a type of land division, they are not subject to the provisions of LIP Section 10.4 R."

A review of the other provisions of the LCP dealing with land divisions are consistent with this interpretation. For those types of divisions that increase the number of parcels, the City cannot approve the development unless they are consistent with the maximum LCP density designation and slope density criteria, do not create parcels smaller than the average size of surrounding parcels, cluster development, minimize impacts to visual resources, provide for adequate access and an all-weather road, do not create parcels that consist of environmentally sensitive habitat areas (ESHA),[4] or an ESHA buffer, do not create any parcel where a shoreline protective device would be necessary to protect the development, etc. (LIP, §§ 15.2–15.3.) Likewise, land divisions that result in the same number of parcels such as lot line adjustments, may

---

[4] An ESHA is defined in the California Coastal Act of 1976 (§ 30000 et seq.) as an "area in which plant or animal life or their habitats are either rare or especially valuable because of their special nature or role in an ecosystem and which could be easily disturbed or degraded by human activities and developments." (§ 30107.5.)

not be approved unless the City makes findings that the reconfigured parcels meet certain size standards, will not increase the amount of ESHA that would be impacted by development on any of the parcels, that the reconfiguration will not result in additional landform alteration, or that future development of the adjusted parcels will not result in additional visual impacts. (LIP, § 15.5.) Conversely, land divisions that result in fewer parcels, such as a land merger, only require the City to "determine[] that the merger is not inconsistent with any policy or standard of the LCP that protects environmentally sensitive habitat areas and/or visual resources of the coastal zone" and do not require the parcels to meet size standards or other development criteria. (LIP, § 15.4.1A.2.)

■ Here, two possible interpretations of LIP former section 10.4R. are presented, one by the Commission and one by appellants. We are inclined to defer to the Commission's interpretation because it presents a reasonable interpretation that is in keeping with the purposes of the LCP. (*REA Enterprises, supra*, 52 Cal.App.3d at p. 610.) Accordingly, the Commission did not abuse its discretion in finding no substantial issue. (§ 30625, subd. (b).)

We are also not persuaded by appellants' argument that the City's revision of a draft City resolution demonstrates the existence of a substantial issue. The City was well within its rights to clarify an ambiguous provision of its resolution.

B. *Lot Size*

■ Appellants' second argument—that the merged lot does not meet the lot size requirements under the LCP—also fails to raise a substantial issue. Under section 3.3 of the LIP, all "new" lots created within a single-family district must comply with minimum lot area, width and depth requirements. It is undisputed that the merged lot would not meet these size requirements. However, the Commission determined, "There is a clear benefit to reducing the total number of parcels, even if the resultant lots are closer to required standards, but are still undersized. [¶] So, the appellants' contention that the City's approval of the lot merger associated with the subject project is not consistent with the provisions of the LCP regarding density and lot size standards does not raise substantial issue because such standards do not apply to mergers." The City considered the alternative of not allowing any development on the lots, but concluded, "the project site is zoned [Single Family Medium]. Thus, prohibiting economic use of the property; the no project

alternative is not a legally feasible alternative." For the same reasons discussed above, we agree with the Commission that appellant's argument fails to rise to the level of a substantial issue where the intent of the LCP has been met.

## III. *California's State Lands Commission (CSLC) Finding*

Appellant also argues the City was required to reject the application because the CSLC did not make an affirmative determination required under section 10.5C. of the LIP. Section 10.5C. requires "[a]ll applications for proposed development on a beach or along the shoreline . . . shall contain written evidence of a review and determination from the State Lands Commission relative to the proposed project's location to or impact upon the boundary between public tidelands and private property." That is, the CSLC must determine there is no evidence the proposed development will encroach on tidelands or other public trust interests. If not, the developer must bypass the City and submit its application to the Commission directly. (LIP, § 10.5C.)

The CSLC, when asked for a determination under section 10.5 of the LIP, responded: "We do not at this time have sufficient information to determine whether this project will intrude upon State sovereign lands. Development of information sufficient to make such a determination would be expensive and time-consuming. We do not think such an expenditure of time, effort and money is warranted in this situation, given the limited resources of this agency and the circumstances set forth above. This conclusion is based on the location of the property, the character and history of the adjacent development, and the minimal potential benefit to the public, even if such an inquiry were to reveal the basis for the assertion of public claims and those claims were to be pursued to an ultimate resolution in the State's favor through litigation or otherwise. [¶] Accordingly, the CSLC presently asserts no claims that the project intrudes onto sovereign lands or that it would lie in an area that is subject to the public easement in navigable waters or that it falls within the LCP's ten-foot setback requirement."

Again, appellants urge a strict construction of LIP section 10.5, arguing Stibel's permit should have been rejected because the CSLC failed to make the required determination. Because "[t]he law neither does nor requires idle acts" (Civ. Code, § 3532), we are unwilling to unwind the events leading to approval of Stibel's permit under these circumstances. It would be a tremendous waste of time and resources to require Stibel to submit a new application to the Commission at this juncture, particularly when the Commission has already declined to consider it. In any event, we find the CSLC's conclusion complies with LIP section 10.5's requirements.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs of appeal.

Cooper, P. J., and Rubin, J., concurred.