Filed 9/9/15  La Mirada Avenue Neighborhood Assn. of Hollywood v. City of L.A. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LA MIRADA AVENUE NEIGHBORHOOD ASSOCIATION OF HOLLYWOOD, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent, <br><br> 5929 SUNSET (HOLLYWOOD), LLC, <br><br> Real Party in Interest and Appellant. | B259672 <br><br> (Los Angeles County <br> Super. Ct. No. BS137262) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Armbruster Goldsmith & Delvac, LLP, R.J. Comer; Sullivan & Cromwell, LLP, Robert A. Sacks, Edward E. Johnson, Fanxi Wang and Jonathon Townsend for Real Party in Interest and Appellant.

The Silverstein Law Firm and Robert P. Silverstein for Plaintiff and Respondent.

* * * * * *

In this mandamus action, plaintiff La Mirada Avenue Neighborhood Association of Hollywood (La Mirada) is a group of residents and residential property owners in the City of Los Angeles (City), who advocate for residential quality of life issues in Hollywood. Real party in interest 5929 Sunset (Hollywood), LLC (the Developer) constructed the Sunset and Gordon Project (the project) in Hollywood. Before the Developer built the project, the so-called Old Spaghetti Factory (OSF) building occupied part of the space. This building had some historical significance. The Developer's predecessor in interest agreed to preserve the façade of the OSF building and incorporate it into the project. As we will explain below, this did not occur. Instead, the Developer changed the plan and completely demolished the OSF building. La Mirada brought this action to compel certain remedies from the City and the CRA/LA[1] for the demolition of the OSF façade. The trial court granted the petition in large part. We affirm.

**FACTS AND PROCEDURE**

*1. The Project and Its Approval*

The project is a high-rise, mixed-use development located at 5929-5945 Sunset Boulevard and 1512-1540 North Gordon Street in Hollywood. The project consists of a 23-story, 260-foot tall building, containing approximately 305 residential units, 40,000 square feet of office space, 13,500 square feet of retail space, and approximately 21,000 square feet of public park space. The 23-story building includes subterranean parking levels. The original developer of the project was Sunset & Gordon Investors, LLC (Sunset Gordon). The current Developer is the successor in interest to Sunset Gordon and assumed all its rights and obligations with respect to the project.

---

[1] The CRA/LA acted as the City's lead agency for the project for purposes of compliance with the California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.) (CEQA). It is a successor agency to the City's original redevelopment agency. Redevelopment agencies were formed by the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) to adopt and effectuate redevelopment plans for the elimination of blighted areas. (*Community Development Com. v. County of Ventura* (2007) 152 Cal.App.4th 1470, 1478.)

The OSF building and other structures previously occupied the space on which the project now sits. Although the OSF building was erected in 1924, it was not designated a historic landmark at the national, state, or local levels. Still, Sunset Gordon's plans for development recognized that the OSF building had historical value. The final environmental impact report (EIR) under CEQA indicated that the proposed project would incorporate the OSF building façade into the new development "as a beneficial design feature, preserving that portion of the building to retain its distinctive qualities and preserve local neighborhood character." At the same time, the EIR's section on "Alternatives to the Proposed Project" recognized the possibility that Sunset Gordon would not retain the OSF building but would memorialize the social significance of the building in some other way. But by the time the City fully approved the project, the requirement to retain the OSF façade had been incorporated into various approvals and entitlements granted by the City, including as follows.

Zone Change Ordinance and "Q Condition 7": The City's approval of the project involved adopting a new ordinance (L.A. Ord. No. 180094, amending L.A. Mun. Code, § 12.04) that among other things changed the zoning for the property. The zone change ordinance placed the property in the so-called (Q) classification and included "(Q) Qualified Conditions of Approval."[2] One of the conditions, which we shall refer to as "Q Condition 7," stated in pertinent part: "The use and development of the property *shall be in substantial conformance with the plot plan* submitted with the application and marked Exhibit B1, dated March 13, 2008, and attached to the subject City Plan Case file. Prior

---

[2] Section 12.32, subdivision G of the Los Angeles Municipal Code (LAMC) is entitled "Special Zoning Classifications." Subdivision G.2 allows for property to be zoned with the "Q Qualified Classification." (LAMC, § 12.32, subd. G.2.) The City may use the Q Qualified Classification when "the property [shall] not be utilized for all the uses ordinarily permitted in a particular zone classification and/or . . . the development of the site shall conform to certain specified standards." (LAMC, § 12.32, subd. G.2.(a).) Thus, here, the (Q) Qualified Conditions of Approval placed limitations on the development and use of the project property.

to the issuance of building permits, revised, detailed development plans that *show compliance with all conditions of approval* . . . shall be submitted to the satisfaction of the Planning Department." (Italics added.)

Plot Plan:  The plot plan referenced in Q Condition 7 graphically depicted the project.  A notation pointing to the OSF building read:  "Portion of existing building to remain." (Capitalization omitted.)  A graphic depiction of the proposed demolition contained another notation for the OSF building that read:  "Extent of existing building façade to be maintained and refurbished." (Capitalization omitted.)  Accordingly, Q Condition 7 required that the Developer build the project in substantial conformance with these notations on the plot plan.

Vesting Tentative Tract Map:  The City approved a vesting tentative tract map for the project containing a number of notes, one of which stated:  "Existing structure of [OSF] building is to remain and be incorporated into new development (corner of Sunset and Gordon).  All other existing structures to the north (off Gordon Street) to be removed for new development."  Findings related to the vesting tentative tract map described the project as including "a partial structural treatment plan to retain and incorporate a portion of the existing [OSF] Building as a prominent design element at the corner of Sunset Boulevard and Gordon Street."  The findings also stated that adverse and unavoidable impacts of the project would be outweighed by "substantial community benefits," including that the project would promote rehabilitation and restoration by preserving key elements of the OSF building.

Parking-related Variances:  The City approved nine land use variances for the project.[3]  Among these were variances to permit reduced residential parking, increased

---

[3]     LAMC section 12.27 permits developers to seek, and the City to approve, "variances," or departures, from the City's standard zoning ordinances. (*Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 182.)  "A comprehensive zoning plan could affect owners of some parcels unfairly if no means were provided to permit flexibility.  Accordingly, in an effort to achieve substantial parity

compact car spaces, and the elimination of clear space (that is, elimination of the extra space typically required where parking stalls adjoin structural elements such as columns or walls). Sunset Gordon justified the parking variances by relying in part on the requirement to retain the OSF façade. It asserted that the retention of the façade prevented it from developing a subterranean parking structure under that area of the project, thereby limiting the quantity and size of parking spaces the project could accommodate. Additionally, at hearings before various City entities, representatives for Sunset Gordon testified that the project would preserve the façade of the building and the need to retain the façade justified the parking variances and other exemptions for the project. The City's findings approving the project cited the retention of the OSF façade as one justification for the variances.

### 2. La Mirada's First Lawsuit Challenging the Project

The above project approvals and transactions occurred in 2007 or 2008. In August 2008, La Mirada filed a petition for writ of mandate challenging various land use entitlements, variances, and discretionary approvals that the City had granted the project. (*La Mirada Avenue Neighborhood Association of Hollywood v. City of Los Angeles* (Super. Ct. L.A., 2009) No. BS116355 (*La Mirada I*).) The City and Sunset Gordon's opposition to the petition argued in relevant part that the retention of the OSF building was one of several special circumstances justifying the parking variances. Similarly, at oral argument, Sunset Gordon asserted that the retention of the OSF building was a special circumstance justifying the parking variances because subterranean parking could not be built under the OSF building. The trial court denied La Mirada's writ petition in *La Mirada I*.

---

and perhaps also in order to insulate zoning schemes from constitutional attack, our Legislature laid a foundation for the granting of variances. Enacted in 1965, section 65906 of the Government Code establishes criteria for these grants . . . ." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 511, fn. omitted.)

We affirmed the court's decision in a nonpublished opinion. (*La Mirada Avenue Neighborhood Association of Hollywood v. City of Los Angeles* (Sept. 22, 2010, B217060).) The appeal focused on the three parking variances in particular. We held that substantial evidence supported the administrative findings and these findings supported the decision to grant the variances. We noted there was insufficient room for the parking spaces that the LAMC would require without the parking variances. We also noted the reasons for this were straightforward, and they included the need to retain part of the OSF building: "These [reasons] are the unusual L-shaped configuration of the site of the Project, the partially residential zoning that imposes the higher parking space requirements, the higher water table that limits the number of subterranean levels, *the presence of the OSF building that reduces the space available for parking*, and the zoning limitations on above-the-ground parking." (*La Mirada Avenue Neighborhood Association of Hollywood v. City of Los Angeles, supra*, B217060, italics added.)

### 3. Complete Demolition of the OSF Building

During the time *La Mirada I* was pending (roughly August 2008 to September 2010), the project had essentially halted. Neither demolition nor construction occurred. Sunset Gordon applied for a partial demolition permit in February 2008 before it stopped work on the project. Paperwork connected to that application described the work as "partial demolition" of the OSF building and indicated the OSF walls would be braced and would remain part of the proposed new building.

The Developer revived the project around August 2011, when it took over the project from Sunset Gordon. The Developer's engineer and architect evaluated the proposed project and issued opinions relating to the OSF building. The engineer opined that the Developer should demolish and reconstruct the OSF façade rather than try to maintain the existing structure. He concluded that the thickness of the walls in the building and their less-than-ideal seismic retrofitting made them prone to structural damage during heavy construction because of vibrations. While workers could brace the walls, working around the bracing would increase the risk of injury. The architect opined that the only way to fully restore the OSF building to reflect its original 1924 appearance

6

was to demolish it and reconstruct it based on visual records. He indicated that preservation of the existing façade was not feasible due to deterioration caused by vacancy, vandalism, and exposure to weather.

The Developer met with CRA/LA staff members and discussed demolishing the entire OSF building and reconstructing the façade in the 1920's style, while also salvaging four wood trusses and a fireplace mantel for installation in the new building. In January 2012, the City department of building and safety (LADBS) issued the Developer a permit for full demolition of the OSF building. Because of some errors in clearing the demolition permit, the permit was re-cleared on February 21, 2012, and the Developer began demolishing the OSF building that day. The Developer completed demolition on February 22, 2012. It salvaged and removed the trusses and mantel to an offsite location.

LADBS issued building permits and the Developer began construction in July 2012.

### 4. Filing of the Instant Lawsuit and Exhaustion of Administrative Remedies

La Mirada filed the instant petition for writ of mandate in May 2012 challenging the full demolition of the OSF building. In relative short order it moved for a preliminary injunction staying construction of the project. The Developer had completed approximately 16 percent of the project at that point. The court held that La Mirada demonstrated a probability of success on its claims that the Developer and the City had violated City ordinances in demolishing the OSF building, but the court denied the motion for failure to exhaust administrative remedies, among other reasons. The court directed La Mirada to exhaust its administrative remedies before the case went any further.

La Mirada then filed an administrative appeal with LADBS, arguing that the agency issued the demolition and building permits in violation of project conditions and approvals. LADBS concluded that it did not err and La Mirada appealed that decision to the City director of planning.

A City zoning administrator heard and determined the appeal on behalf of the director of planning. The zoning administrator determined that LADBS erred in granting

7

the full demolition permits but not in granting the building permits for construction of the project. He held the Developer fully complied with approved plans except for the complete demolition of the OSF building, and as such, the project substantially conformed to the plot plan. He determined that the Developer could seek a clarification of Q Condition 7 to remedy the error in issuing the demolition permit. That is, a clarification of the Q Condition could "correct" the plot plan so that retention of the OSF façade was not required.[4]

La Mirada next appealed the zoning administrator's decision to the central area planning commission for the City (the Commission), which upheld the zoning administrator's decision in full.

The Developer then met with the City planning department to discuss what additional approvals and environmental review might be needed to proceed with the project, given that LADBS erred in granting the full demolition permit. As a result of this meeting, the Developer filed the following applications: (1) to clarify Q Condition 7, which involved revising the notes on the plot plan to reflect that the Developer completely demolished the OSF building and re-created the façade; (2) for plan approval findings relating to the parking and other variances mentioning retention of the OSF building, which explained that re-creation of the façade presented the same unique circumstances and hardships as retention; and (3) to revise notes on the vesting tentative tract map to reflect demolition and re-creation of the OSF façade rather than retention. The Developer also submitted an addendum to the EIR that attempted to address any potential environmental impacts of these proposed revisions.

It appears the Developer completed construction, or at least mostly completed it, by September 2014, and LADBS issued temporary certificates of occupancy for the public park and residential units at that time.

---

**4**     LAMC section 12.32, subdivision H permits developers to request a clarification of a Q Condition from the director of City planning.

## 5. *Trial Court's Ruling on the Operative Petition*

La Mirada filed the operative petition, the second amended petition, after it had exhausted its administrative remedies by appealing up to the Commission. The petition sought a writ of mandate voiding the demolition permits and all building and related permits issued for the project. The petition pled traditional mandamus (Code Civ. Proc., § 1085) and, in the alternative, administrative mandamus (*id.* § 1094.5). The court determined that it would review the claim to void all permits as administrative mandamus, given that La Mirada had pursued an administrative appeal and the court had an administrative record before it. The court heard the petition in October 2014, just after the temporary certificates of occupancy had issued.

As a threshold matter, the City and the Developer argued that La Mirada's claims were moot because the project was complete and the City had already required the Developer to seek revisions of the relevant project approvals affected by the complete demolition of the OSF building. The court rejected this mootness argument and held a determination that the "building permits are void ha[d] meaning."

The court then declared the Commission had abused its discretion in determining the building permits were validly issued. It characterized the Commission's decision that the demolition permit was void but the building permits were not as "improper piecemealing of the demolition permit from the remaining permits." Under Q Condition 7, the use and development of the property had to substantially conform to the plot plan, and compliance with all conditions of approval was required "[p]rior to the issuance of building permits." The court held demolition and reconstruction of the façade did not substantially conform to the plot plan or comply with all conditions of approval, and pursuant to LAMC sections 11.02 and 12.29, *all* permits were therefore void, including the demolition permit, building permits, and temporary occupancy certificates.

While the court voided all permits, it determined that the City had "discretion as to what to require from Developer, which might have to modify the Project or provide parking alternatives." It also determined that the CRA/LA and the City had to conduct a additional environmental review to consider the potential impacts of the demolition and

9

reconstruction of the façade, something the City should have done before permitting the change to the project. It expressed doubt that the Developer's proposed addendum to the EIR would suffice and indicated something more—a subsequent EIR or supplemental EIR under CEQA[5]—might be required. Nevertheless, it observed that "the City ha[d] not exercised its discretion on the adequacy of Developer's proposed environmental review, and the issue [was] not ripe for judicial review." No permits could issue until the City had revised project approvals and completed associated CEQA review.

After the court entered judgment (1) directing the City to void all permits previously granted, including but not limited to demolition and building permits and certificates of occupancy, and (2) directing the City and the CRA/LA to prepare and process subsequent environmental review before permitting any more changes to the project, the Developer timely appealed.

## DISCUSSION

### 1. The Petition Is Not Moot

The Developer renews its argument from below that the operative petition is moot and subject to dismissal. Like the trial court, we disagree.

A court should decide only actual controversies and will not render opinions on moot questions. (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557.) "A case is moot when any ruling by [the] court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.) "Notwithstanding, there are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an

---

**5** Under State CEQA Guidelines (Cal. Code Regs., tit. 14, § 15001), "substantial changes" to the project may require a "subsequent" EIR. (*Id.*, § 15162, subd. (a).) A "supplemental" EIR may suffice if only "minor additions or changes" to the previous EIR are necessary so that it applies adequately to the changed project. (*Id.*, § 15163, subd. (a).) An "addendum" to the EIR is appropriate "if some changes or additions are necessary" but there have been no substantial changes to the project of the type calling for a subsequent EIR. (*Id.*, § 15164, subd. (a).)

issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480.)

The Developer's mootness argument proceeds as follows. Demolition of the OSF façade cannot be reversed. The City declared the demolition permits erroneously granted long before the court entered judgment. The building permits "are no longer operable" because the Developer has finished construction. The project is complete—the City has issued temporary certificates of occupancy, tenants are occupying the residential tower of the project, and the public park is open. The City commenced the remedial process sought by La Mirada when it instructed the Developer to apply for revisions to project approvals and provide for subsequent environmental review by submitting an addendum to the EIR. Thus, the case was rendered moot by the City's remedial process, the Developer asserts, and the trial court's judgment could have no practical impact.

To the contrary, a ruling on the petition has an important practical impact. It is true that, while the action was pending, the City began to pursue *some* of the remedies sought by La Mirada. But the City declined to void the building and other permits beyond the demolition permit, including the temporary certificates of occupancy. The operative petition expressly sought to void these certificates and all other permits and prohibit issuance of any further certificates until the City's decisionmaking bodies had formally revised and reapproved the project. The trial court's written ruling granted this relief. The voiding of these certificates and a stay on further ones pending reapproval is not a meaningless act with no practical impact. The residential building and park cannot be occupied without valid certificates of occupancy. (LAMC, §§ 91.109.1, 91.109.5.) If La Mirada is correct that all permits including occupancy certificates are void pending reapproval, this clearly affects the tenants of the building, the public who use the park, and the Developer, who will have to deal with a project that may not be occupied for some period of time.

11

Put another way, even if the case were moot, we would exercise our discretion to consider it because a material issue remains for our determination. (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga, supra*, 82 Cal.App.4th at pp. 479-480.) The Developer can hardly contend that it is immaterial whether it has valid certificates of occupancy pending reapproval. We think we may safely assume the issue matters to the Developer. If it did not, it would not have stopped the City from enforcing an order to vacate during the pendency of this appeal. The City issued an order to vacate to the Developer in March 2015 because the City believed the temporary certificates of occupancy, which were good for six months starting in September 2014 (LAMC, § 91.109.5), had expired, and it would not issue more pending the outcome of this case. The Developer petitioned us for a writ of supersedeas to stay the City's order to vacate pending this appeal, and we issued the requested stay order.

Even if La Mirada has obtained some of the relief it originally sought, at least one material issue remains for determination, and a court ruling has practical impacts. We will not direct the trial court to dismiss the petition as moot.

## 2. *The Commission Abused Its Discretion in Declining to Void All Permits and Licenses*

We now turn to the merits of the key issue, whether the City should have voided all permits including the certificates of occupancy. The Developer does not truly contest that the City issued the full demolition permit in error. Instead, the Developer contends the City need not void all other permits to make up for the complete demolition of the OSF building. We disagree. The Commission abused its discretion in finding the demolition permits were invalid but not the subsequently issued permits.

### a. Standard of Review

"Code of Civil Procedure section 1094.5, the state's administrative mandamus provision . . . structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies. . . . Subdivision (b) of section 1094.5 prescribes that when petitioned for a writ of mandamus, a court's inquiry should extend, among other issues, to whether 'there was any prejudicial abuse of discretion.'" (*Topanga Assn. for a*

12

*Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at pp. 514-515.) Code of Civil Procedure section 1094.5, subdivision (b) defines "abuse of discretion" to include instances in which the administrative agency "has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." The trial court examines whether substantial evidence in the administrative record supports the agency's findings. (*Horwitz v. City of Los Angeles* (2004) 124 Cal.App.4th 1344, 1354 (*Horwitz*).)

The City's interpretation of its own municipal code and ordinances is entitled to great weight. Still, the ultimate interpretation of the LAMC and City ordinances is a question of law that we review de novo, and we will not follow the City's interpretation of them when that interpretation is clearly erroneous. (*Horwitz, supra*, 124 Cal.App.4th at p. 1354; *Terminal Plaza Corp. v. City and County of San Francisco* (1986) 186 Cal.App.3d 814, 826-827.)

Our role on appeal is identical to that of the trial court. Thus, we are not bound by the trial court's determinations. (*Lucas Valley Homeowners Assn. v. County of Marin* (1991) 233 Cal.App.3d 130, 142; *Alberstone v. California Coastal Com.* (2008) 169 Cal.App.4th 859, 863.)

**b. Analysis**

The Commission committed a prejudicial abuse of discretion because it did not proceed in the manner required by law here. (Code Civ. Proc., § 1094.5, subd. (b).) We must therefore affirm the trial court's judgment granting La Mirada's mandamus petition.

The zone change ordinance adopted to approve this project included Q Condition 7. Q Condition 7 had two requirements. First, that the Developer shall use and develop the property in "substantial conformance with the plot plan." And second, that "[p]rior to the issuance of building permits," the Developer shall submit development plans showing "compliance with all conditions of approval."

The Commission adopted the decision of the zoning administrator. The zoning administrator found the full demolition permit violated the first requirement of Q Condition 7 in that the permit did not substantially conform to the plot plan. Specifically,

13

the plot plan was "quite clear" that the OSF façade was to be maintained and refurbished, and complete demolition was inconsistent with this plan. He observed that the Developer could have sought to change the plot plan so that it could demolish and reconstruct the façade, but because the Developer did not, LADBS erred in granting the full demolition permit. If the demolition had substantially conformed to a modified plot plan, there would have been no violation of Q Condition 7.

This portion of the zoning administrator's decision is consistent with the LAMC. LAMC section 11.02 provides: "Notwithstanding any other provisions of this Code or any other ordinance of the City of Los Angeles, *no permit or license shall be issued in violation* of any provisions of this Code *or any other ordinance of the City of Los Angeles*; if any permit or license is issued in violation of any provision of this Code or any other ordinance of the City of Los Angeles *the same shall be void.*" (*Italics added.*) LADBS issued the full demolition permit in violation of Q Condition 7 and, consequently, in violation of the zone change ordinance. The permit was void for violating a City ordinance.

Despite his ruling that the full demolition permit did not comply with Q Condition 7, the zoning administrator determined that the later-issued building permits did substantially conform to Q Condition 7. This is where his decision "does not proceed in the manner required by law" and so constitutes an abuse of discretion. The second part of Q Condition 7 required the Developer to submit development plans complying with all conditions of approval *before* building permits could issue. If completely demolishing the OSF building did not substantially conform to the plot plan—as the zoning administrator determined—then a development plan in which the façade was completely demolished did not substantially conform to the plot plan. In both cases, the use and development of the property violated Q Condition 7. We see no logical basis for "piecemealing" the two types of permits, as the trial court put it. The City should not have issued the building permits because of the failure to comply with Q Condition 7. What is more, LAMC section 11.02 mandated that *any* permit or license issued in violation of Q Condition 7 (the zone change ordinance) shall be void, not just demolition

14

permits. Accordingly, *all* the building permits and licenses were void, as they were based on a development in violation of Q Condition 7.**6**

The Developer contends that we should accord the City agency's interpretation of Q Condition 7 and LAMC section 11.02 great deference, and under these provisions, the City properly exercised its discretion in determining the building permits were valid. The Developer is mistaken. Once the City determined complete demolition of the OSF building did not substantially conform, it had no discretion to leave subsequently issued permits untouched. The unambiguous language of LAMC section 11.02 stated that such noncompliant permits "shall be void." In case there is any confusion, the LAMC provides: "'Shall' is mandatory." (LAMC, § 11.01, boldface omitted.)

*Horwitz* demonstrates our points. In that case, a homeowner obtained a building permit to construct an addition to his house. He based the permit on an erroneous calculation of the required front-yard setback such that the completed remodel was 14 feet closer to the street than the LAMC permitted. (*Horwitz, supra*, 124 Cal.App.4th at p. 1347.) A neighbor challenged the homeowner's permit by way of an administrative appeal. (*Ibid.*) The administrative appeal went up to the Commission, which ruled in favor of the homeowner on the front-yard setback issue. (*Id.* at p. 1351.) The trial court disagreed and issued a writ commanding the City to revoke all of the homeowner's building permits and his certificate of occupancy. (*Id.* at p. 1354.) The appellate court affirmed. (*Id.* at p. 1355.) The City asserted that the court had no authority to revoke the

---

**6**　La Mirada also relies on section 12.29 of the LAMC to argue that the City should have voided all permits for violating Q Condition 7. This section states: "The violation of any valid condition imposed by the Director, Zoning Administrator, Area Planning Commission, City Planning Commission or City Council in connection with the granting of any action taken pursuant to the authority of this chapter, shall constitute a violation of this chapter and shall be subject to the same penalties as any other violation of this Code." (LAMC, § 12.29.) We need not address LAMC section 12.29 or the Developer's arguments in opposition to this section. Resort to this section is unnecessary when LAMC section 11.02 obtains the result La Mirada seeks.

permits, and it should have remanded the matter to the City for it to choose a course of action within its discretion. (*Ibid.*) That argument missed the point. A zoning ordinance set forth the formula for measuring front-yard setbacks. There was no discretion involved in applying the setback formula. The homeowner's construction had to conform to the mandatory requirements of the setback ordinance. (*Ibid.*) The construction did not conform because the homeowner miscalculated the setback and the City mistakenly accepted that calculation. It followed that the City had to revoke the permits. The City had no discretion to issue a permit in the absence of compliance with the setback ordinance. (*Id.* at pp. 1355-1356.) The mandatory revocations included the certificate of occupancy because it could not stand without the permits. (*Id.* at p. 1355, fn. 6.)

Similarly, here, the City had no discretion to issue permits that violated Q Condition 7 and the zone change ordinance. LAMC section 11.02 unambiguously voided such permits, and, by its clear terms, it did not allow the City any discretion to not void them. The void permits must also include the certificates of occupancy, as in *Horwitz*. Each application for a type of building permit included an application for certificate of occupancy in the same document. Once the City granted the applications and issued the temporary certificates, the LAMC required the certificates of occupancy to contain the building permit numbers on which they relied. (LAMC, § 91.109.4, subd. 1.) With void underlying permits, the certificates of occupancy could not stand.

It is important to note that we are not holding the City may never issue permits and certificates of occupancy for the project. The City had no discretion to refuse to void the permits and certificates because of the mandatory duty to void set forth in LAMC section 11.02. But all parties agree that it has discretion to revise the project conditions, entitlements, and EIR that it approved in the first place and to make the changes it deems necessary after demolition of the OSF building. Once the City has completed its remedial review, it will presumably issue permits and certificates that comply with the revised project documents. The City started this process in March 2014 when it directed the Developer to apply for various revised entitlements and submit revisions to the EIR. The results of that remedial process were not before the trial court, nor are they before us.

16

As such, we will not attempt to speculate about what a proper exercise of discretion would look like.

The Developer relies on cases like *Riggs v. City of Oxnard* (1984) 154 Cal.App.3d 526, which held the City of Oxnard had the discretion to resolve a zoning violation in a number of ways, including by issuing a criminal citation for the violation or by the less drastic measure of amending the zoning ordinance to bring the violator in compliance with the amended ordinance. (*Id.* at pp. 530-531.) But *Riggs* merely stands for the unremarkable position that when an ordinance states a violation "may be" prosecuted in one way, the use of the word "may" signifies that the city has the discretion to resolve the violation in some other way. (*Id.* at p. 530.) As we have discussed at length, this case involves an LAMC section that imposes a mandatory duty to void the permits at issue. It is distinguishable from *Riggs*.

Before concluding, we note that La Mirada contends collateral and judicial estoppel bar the Developer's positions in this case. We need not decide whether these doctrines apply. Whether they apply or not, we are not persuaded by the Developer's positions.

## DISPOSITION

The judgment is affirmed. La Mirada shall recover costs on appeal.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.


17