Filed 12/16/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JACK WALL et al.,<br><br>   Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA COASTAL COMMISSION,<br><br>   Defendant and Respondent. | 2d Civil No. B312912<br>(Super. Ct. No. 19CV03464)<br>(Santa Barbara County) |

The California Constitution guarantees public access to the navigable waters of the state, including those along the Pacific Coast. (Cal. Const., art. X, § 4.) For nearly five decades, enforcing this guarantee at Hollister Ranch in Santa Barbara County has been fraught with controversy, and the Legislature has enacted multiple provisions to the California Coastal Act of 1976 (Coastal Act) that aim to ensure public access. Here, we conclude that one such provision—Public Resources Code[1] section 30610.8—requires payment of an in-lieu public access fee for each coastal development permit (CDP) applicable to Hollister Ranch.

---

[1] Unlabeled statutory references are to the Public Resources Code.

The California Coastal Commission (Commission) denied a CDP request from Jack Wall and the Wall Family Trust (collectively, the Walls) to build a pool and spa on their Hollister Ranch property. The Walls challenged the Commission's denial in a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5), arguing that: (1) requiring access to their property as a condition of the CDP violates the unconstitutional conditions doctrine, (2) the Coastal Act (§ 30000 et seq.) does not allow the Commission to condition a CDP on payment of a $5,000 in-lieu public access fee, and (3) if the Act does allow the fee, the Commission did not proceed in the manner required by law when it failed to approve their permit subject to payment of the fee. The trial court agreed with the Walls' third argument and ordered the Commission to reconsider its denial of the Walls' CDP request.

On appeal, the Walls contend: (1) the Coastal Act does not allow the Commission to condition approval of the CDP on access to their property, (2) the Act does not allow the Commission to condition approval of the CDP on payment of the $5,000 in-lieu public access fee, and (3) even if the Act allows these conditions, imposing them would be unconstitutional. We affirm.

FACTUAL AND PROCEDURAL HISTORY

*The Coastal Act and its permitting process*

In 1976, the Legislature enacted the Coastal Act "'as a comprehensive scheme to govern land use planning for the entire coastal zone of California.'" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793 (*Pacific Palisades*).) The Act mandates careful planning of coastline developments, and requires "any person wishing to

2

perform or undertake any development in the coastal zone . . . [to] obtain a [CDP]" before construction commences. (*Pacific Palisades*, at pp. 793-794.) Local governments implement many of the Act's provisions, including the issuance of CDPs, subject to oversight and approval by the Commission. (*Pacific Palisades*, at p. 794.) The CDPs issued by local agencies are thus "'not solely a matter of local law, but embody state policy.' [Citation.]" (*Ibid.*)

A primary goal of the Coastal Act is to maximize public access to the coast. (*Remmenga v. California Coastal Com.* (1985) 163 Cal.App.3d 623, 629 (*Remmenga*).) New developments are thus generally required to provide access between the nearest public roadway and the coastline. (See §§ 30210 & 30212, subd. (a).) Where an individual landowner in a subdivision lacks authority to provide the required access, the Act requires the landowner to pay an in-lieu public access fee as a condition of CDP approval. (§ 30610.3, subd. (e).) The fee is then deposited into the Coastal Access Account (CAA) for the "purchase of lands and view easements and to pay for any development needed to carry out the public access program." (*Id.*, subds. (b) & (c).) Upon paying the fee, the landowner may "immediately commence construction if the other conditions of the [CDP] . . . have been met." (§ 30610.8, subd. (b).)

Local governments issue CDPs in the context of local coastal programs (LCPs). Each LCP must be developed in consultation with the Commission to ensure that it complies with Coastal Act provisions. (§ 30500, subd. (c).) Once the Commission certifies an LCP, the local government assumes primary permitting authority, with certain decisions appealable to the Commission. (§§ 30512, 30513, 30519, 30603; see also § 30625, subd. (a) [who may appeal].)

3

When a decision is appealed, the Commission must first determine whether the appeal raises a "substantial issue." (§ 30625, subd. (b)(2).) If it does, the Commission holds a de novo hearing at which it "may approve, modify, or deny" the CDP. (*Id.*, subd. (a).) The Commission will approve a CDP only if it complies with the public access and public recreation policies of the Coastal Act and certified LCP. (§ 30604, subds. (b) & (c).)

*The history of Hollister Ranch*

Hollister Ranch is a 14,500-acre subdivision encompassing 8.5 miles of the Santa Barbara County coastline. It is divided into 136 parcels. In the 1970s, the Commission approved several CDPs for new Hollister Ranch residences, conditioned on the dedication of easements for pedestrian trails and recreation areas. After obtaining the CDPs, however, landowners sued to invalidate the conditions.

In 1979—before any court could rule on the landowners' claims—the Legislature added section 30610.3 to the Coastal Act to provide for the in-lieu public access fee scheme described above. The Commission determined that the section applied to Hollister Ranch, and attempted to undertake a survey of area lands so it could calculate the appropriate fee amount. Several landowners then blocked the Commission from completing its survey. The Legislature was thus required to step in again, and in 1982 added section 30610.8 to the Act. This provision, specific to Hollister Ranch, declared that public access to the ranch's coastline "should be provided in a timely manner." (§ 30610.8, subd. (a).) It set the amount of the in-lieu fee for the ranch at $5,000 per permit. (*Id.*, former subd. (b).)

Later that year, Santa Barbara County adopted an LCP that was then approved by the Commission. The LCP

4

includes provisions that implement portions of the Coastal Act. Among those provisions is Policy 2-15, which bars the County from issuing CDPs at Hollister Ranch "unless the . . . Commission certifies that the requirements of . . . [s]ection 30610.3 have been met by each applicant or . . . finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act."

The Commission subsequently approved the Gaviota Coast Plan (GCP) as part of the County's LCP. GCP Development Standard REC-3 requires the payment of "a fee consistent with [s]ection 30610.8 . . . as a condition of each [CDP] issued for development in Hollister Ranch."

Following approval of the GCP, the governor directed the Commission and several other state agencies to update the Hollister Ranch coastal access program. Simultaneously, the Legislature enacted Assembly Bill No. 1680 (Assem. Bill 1680), which, effective January 1, 2020, increased the in-lieu public access fee set forth in section 30610.8 from $5,000 to $33,000 for each permit, to be adjusted annually for inflation.[2] (See Stats. 2019, ch. 692, § 2.)

*Denial of the Walls' CDP request*

The Walls own a 102-acre parcel in Hollister Ranch. It lies about three-quarters of a mile from the Pacific Ocean. The parcel has been developed with a single-family home, guesthouse, barn, and storage structure. There is no evidence that the Walls

---

[2] Because this increase occurred after the Commission's decision in this case, it is inapplicable here. All further references to section 30610.8 are to the version in effect when the Commission denied the Walls' CDP request.

paid an in-lieu public access fee in conjunction with any of these improvements.

In 2018, the Walls applied for a CDP to construct a pool and spa on their Hollister Ranch property. The County's director of planning and development approved the CDP without imposing an in-lieu public access fee. Two members of the Commission appealed that approval to the full Commission, citing noncompliance with the Coastal Act, LCP, and GCP.

The Walls objected to the appeal and urged the Commission to find that it raised no substantial issue. The Walls acknowledged that they had not paid in-lieu public access fees for their prior CDPs, but claimed, without evidence, that a previous owner had paid such a fee when he built a well, septic system, and cistern. The Walls said that they would be willing to pay the fee in exchange for the Commission's approval of their CDP request.

The Commission determined that the appeal raised a substantial issue and held a public hearing. During the hearing, one Commission member said that conditioning the permit on payment of the in-lieu public access fee was "not realistic" because Hollister Ranch landowners had not paid such fees historically and because the fees had not ensured timely public access to the coastline. Another member noted that LCP Policy 2-15 prohibits the issuance of CDPs unless they are consistent with the goals and policies of the Coastal Act. A third declared that "public access to this amazing resource and area has primacy over in lieu fees." A fourth said that the Commission "can't be continuing to approve [CDPs] without access."

At the conclusion of the hearing, the 10-member Commission unanimously rejected the Walls' CDP request. The

6

proposed CDP was not conditioned on payment of the in-lieu public access fee as required by the Coastal Act, LCP Policy 2-15, and GCP Development Standard REC-3. And even if the fee had been paid, the CDP could not issue unless the Commission found either "that the requirements of . . . [s]ection 30610.3 ha[d] been met" or "that access [was] otherwise provided in a manner consistent with the access policies of the Coastal Act." Because the CDP did not include provisions for "public access and public recreational opportunities," the Commission could make neither finding. Additionally, because development and access issues at Hollister Ranch were the subject of pending legislation and administrative updates, approval of the CDP in the midst of these parallel processes would "thwart the goals . . . of the Coastal Act."

The Walls challenged the Commission's denial in a petition for writ of administrative mandate. The trial court granted the petition in part, finding that the Commission did not proceed in the manner required by law because it failed to order the Walls to pay a $5,000 in-lieu public access fee in exchange for a CDP. The court also found it unclear whether the Commission's decision conditioned CDP approval on providing actual access to the ocean—something the Walls, as owners of an inland parcel, cannot provide—so clarification on that basis was required. It remanded the case to the Commission with directions to issue the CDP upon payment of the $5,000 fee unless other factual or legal bases for denial were specified.

DISCUSSION

*Standard of review*

The scope of our review from the judgment on the Walls' petition for writ of administrative mandate is the same as

7

that of the trial court. (*Doe v. Westmont College* (2019) 34 Cal.App.5th 622, 634.) We review the Commission's decision directly, and independently determine whether the Commission proceeded in excess of jurisdiction, whether it provided a fair hearing, and whether it abused its discretion when it denied the Walls' CDP request. (*Ibid.*; see Code Civ. Proc., § 1094.5, subd. (b).) The Commission abused its discretion if it did not "proceed[] in the manner required by law," if its "decision [was] not supported by the findings," or if "the findings [were] not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

*Public access to the Walls' property*

The Walls first contend the Commission erroneously denied their CDP request based on their failure to provide for public access to their property. The basis for this contention is unclear. Nowhere in the Commission's decision does it cite the Walls' failure to provide public access to their property as a reason for denying their CDP request. Rather, the Commission merely noted that the request lacked provisions for access and recreational opportunities "in a manner consistent with the access policies of the Coastal Act."

The Walls have not shown that the Commission required public access to their property. Indeed, it would defy logic had the Commission imposed such a requirement. The Walls' property is located three-quarters of a mile from the coast. Demanding access to their inland property would do little to advance the Coastal Act's goal of providing public access to the coastline.

That some members of the Commission expressed frustration with Hollister Ranch landowners' prior failures to pay in-lieu public access fees and the fees' failure to ensure public

8

access to the coastline abutting the ranch does not change our conclusion. This court's job is not to "'delve into the individual purposes of decisionmakers in a quasi-adjudicative proceeding, but rather [to] look to the findings made by the'" Commission and determine whether they are supported by the record. (*City of Perris v. Stamper* (2016) 1 Cal.5th 576, 592; see also *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1022 [court need only determine whether a CDP denial advanced some legitimate purpose].) Moreover, the Walls rely on statements from a minority of Commission members, and do not show that these comments reflect the views of the Commission as a whole.

One of the Act's goals is to provide "public access" to the coastline along Hollister Ranch "in a timely manner." (§ 30610.8, subd. (a).) The Commission members' statements are fairly read as bemoaning that fee requirements have not resulted in meaningful public access over the past four decades. These isolated comments, like the Commission's decision, do not require public access to the Walls' property.[3]

*The in-lieu public access fee*

The Walls next contend the Coastal Act does not allow the Commission to condition approval of a CDP on the payment of a $5,000 in-lieu public access fee. We disagree.

Whether the Coastal Act requires the Walls to pay a $5,000 in-lieu public access fee for approval of their CDP request presents a question of statutory interpretation for our independent review. (*Western States Petroleum Assn. v. Board of*

---

[3] Because the Commission did not condition approval of the Walls' CDP request on providing public access to their property, we do not consider whether such a condition would be constitutional.

9

*Equalization* (2013) 57 Cal.4th 401, 415.)  Our fundamental task is to ascertain the Legislature's intent when it adopted the Act's provisions.  (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 803.)  We begin with the words of those provisions, giving them their plain, commonsense meanings.  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  We interpret the words in context, harmonizing the Act's provisions whenever possible.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 (*Mejia*).)  If harmonization is not possible, later-enacted and more specific provisions will take precedence over earlier and more general ones.  (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961 (*State Dept. of Public Health*).)

We will follow the Act's plain meaning unless doing so would lead to absurd results the Legislature did not intend. (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856.)  If we cannot determine that meaning from the statutory language, we will defer to the Commission's interpretation of the Act so long as it is not clearly erroneous.  (*REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611 (*REA Enterprises*).)  We may also examine legislative history (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 803) and "consider the impact of an interpretation on public policy" (*Mejia*, *supra*, 31 Cal.4th at p. 663).  But we can neither insert words into the Act that the Legislature omitted nor omit words the Legislature inserted (Code Civ. Proc., § 1858); our job is not to rewrite statutes to conform to an assumed intent that does not appear from their language (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545).

"Whenever the [C]ommission determines (1) that public access opportunities through an existing subdivided area

10

. . . are not adequate to meet the public access requirements of [the Coastal Act] and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a [CDP] for the reason that some other person or persons has legal authority, the [C]ommission shall implement public access requirements." (§ 30610.3, subd. (a).)  This requires the Commission to identify "specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the . . . manner in which public access will be managed, and the types of permitted public uses." (*Id.*, subd. (b).)  The State Coastal Conservancy then implements the program, using funds deposited in the CAA to "purchase . . . lands and view easements and to pay for any development needed to carry out the public access program." (*Id.*, subds. (b) & (c).)

The CAA is funded via in-lieu public access fees: "Every person receiving a [CDP] or a certificate of exemption for development on any vacant lot within [a designated subdivision] shall, prior to the commencement of construction, pay . . . an 'in-lieu' public access fee." (§ 30610.3, subd. (e).)  For most subdivisions, the amount of this fee is determined by "dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area." (*Ibid.*)  Acquisition costs, in turn, are based on a formal appraisal of subdivision lands. (*Id.*, subd. (f).)  But as noted above, Hollister Ranch landowners prevented state surveyors from undertaking such an appraisal.  Thus, to achieve the goal of providing the public access contemplated by section 30610.3 "in a timely manner" (§ 30610.8, subd. (a)), the Legislature fixed the amount of the in-lieu public access fee for CDPs issued at the Hollister

11

Ranch:  "For purposes of [s]ection 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) *for each permit*."  (*Id.*, subd. (b), italics added.)  The plain language of this provision clearly and unambiguously permits the Commission to condition approval of the Walls' requested CDP on payment of a $5,000 fee, as the trial court correctly determined.

The Walls disagree, arguing that section 30610.3, subdivision (e), limits imposition of the in-lieu public access fee set forth in section 30610.8, subdivision (b), to developments occurring on vacant lots.  This argument rests on an overly narrow reading of section 30610.8, subdivision (b).  The fee the Legislature fixed in that subdivision was not only for purposes of section 30610.3, subdivision (e), as the Walls' argument presumes, but for purposes of that section as a whole and the entire Hollister Ranch public access program.  (See § 30610.8, subd. (b).)  The goal of section 30610.3 is to provide coastal access in subdivisions like Hollister Ranch and to do so in a timely manner.  Given the recent increase of the in-lieu public access fee by more than 500 percent, it would be absurd to conclude that the Legislature believed the timely, public access desired at Hollister Ranch was achievable via a one-time fee applicable only to initial developments on vacant lots.

The legislative history of relevant Coastal Act provisions reinforces this conclusion.  The Legislature enacted section 30610.3 in 1979, requiring in-lieu public access fees for most subdivisions to be based on formal appraisals of the costs of acquiring subdivision lands.  (See Stats. 1979, ch. 919, § 11.)  But because Hollister Ranch landowners blocked the state from undertaking the requisite appraisals, the adequacy of any per-lot,

12

one-time fee was unknown.  The Legislature thus fixed the amount of the fee at $5,000.  (See Stats. 1982, ch. 43, § 23.)  But instead of limiting the fees to "development[s] on any vacant lot" as it had done when adopting section 30610.3, the Legislature instead required a fee "for each permit" (§ 30601.8, subd. (b)).  This per-permit fee, specific to Hollister Ranch, takes precedence over the generally applicable per-vacant lot fee set forth in section 30610.3.  (*State Dept. of Public Health*, *supra*, 60 Cal.4th at pp. 960-961.)

Moreover, had the Legislature intended for in-lieu public access fees to be paid only for the development of vacant lots at Hollister Ranch instead of for each CDP, it would have said so when it amended section 30610.8 in 2019.  Prior to the adoption of that amendment, neither LCP Policy 2-15 nor GCP Development Standard REC-3 contained the per-vacant lot limitation the Walls urge us to adopt here.  To the contrary, the Commission had consistently interpreted section 30610.8 as requiring the payment of a $5,000 fee for each permit.  GCP Development Standard REC-3, for example, specifies that payment of a $5,000 fee "consistent with [s]ection 30610.8" is required "*as a condition of each [CDP] issued for development in Hollister Ranch.*"  (Italics added.)  The Commission certified this standard while the Legislature was considering Assem. Bill 1680, thereby adopting its interpretation of section 30610.8's fee scheme.  And we presume the Legislature was aware of and acquiesced to this interpretation when it declined to alter the "for each permit" language in section 30610.8 the following year.  (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1017-1018.)  Because that interpretation is not clearly

13

erroneous, we must do the same. (*REA Enterprises*, *supra*, 52 Cal.App.3d at p. 611.)

This interpretation does not render the phrase "on any vacant lot" in subdivision (e) of section 30610.3 mere surplusage, as the Walls claim. (Cf. *People v. Arias* (2008) 45 Cal.4th 169, 180 [courts should avoid statutory interpretations that render words surplusage].) The Walls "confuse[] surplusage with inapplicability." (*People v. Betts* (2020) 55 Cal.App.5th 294, 301.) "Simply because a [statutory] provision does not apply [in certain instances] does not mean that that provision is surplusage." (*Ibid.*) "[S]urplusage results when a provision *does* apply." (*Ibid.*) Section 30610.3's general scheme for calculating in-lieu public access fees does not apply here.

Finally, we reject the Walls' assertion that we previously adopted the per-vacant lot limitation the Walls advocate here when we decided *Remmenga*, *supra*, 163 Cal.App.3d 623. Though we said, in dictum, that section 30610.8 requires payment a "fee of $5,000 for development of one lot" (*Remmenga*, at p. 628), that passing descriptor did not reflect our interpretation of the statute. Our focus in *Remmenga* was on the constitutionality of the in-lieu public access fees imposed on Hollister Ranch landowners, not the proper interpretation of the fee provisions at issue here. (See *id.* at pp. 626-627.) "It is axiomatic that cases are not authority for propositions that are not considered." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.) The trial court correctly concluded that the Coastal Act requires payment of an in-lieu public access fee for approval of the Walls' CDP.

14

*Constitutionality of the in-lieu public access fee*

The Walls alternatively contend that even if the Coastal Act requires them to pay a $5,000 in-lieu public access fee for their CDP, imposing that requirement would be unconstitutional. But the Walls did not raise this contention below. To the contrary, in their petition for writ of administrative mandate they alleged that the Commission did not proceed in the manner required by law *when they failed to approve their CDP request subject to payment of the in-lieu fee.* "It is a well-established tenet of appellate jurisprudence that a litigant may not pursue one line of legal argument in the trial court, and having failed in that approach, pursue a different, and indeed, contradictory line of argument on appeal." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.) "'Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' [Citation.]" (*Ibid.*) The Walls' contention is waived. (*Ibid.*)

DISPOSITION

The judgment is affirmed. The Commission shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.          PERREN, J.

15

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____


Pacific Legal Foundation and J. David Breemer for Plaintiffs and Appellants.
Rob Bonta, Attorney General, Daniel A. Olivas, Assistant Attorney General, Jamee Jordan Patterson and Andrew R. Contreiras, Deputy Attorneys General, for Defendant and Respondent.